## COMMONWEALTH v. D. J. WALLER, JR.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF DAUPHIN COUNTY.

Argued October 26, 1891*—Decided January 4, 1892.
[To be reported.]

(*a*) A vacancy having occurred in the office of superintendent of public instruction, by the death of the incumbent during a recess of the senate, the governor appointed the defendant to said office, and commissioned him to hold it until the end of the next session of the senate, if he should so long behave himself well.

(*b*) At said session, on January 6, 1891, the governor nominated the defendant to the senate for a term of four years, to be computed from March 1, 1890, the date at which he took possession of the office. The senate confirmed the appointment on January 20, 1891. In the meantime, the governor's successor had been inaugurated:

1. Under § 8, article IV. of the constitution, the confirmation by the senate extended the defendant's original appointment, and entitled him to hold the office for the unexpired portion of the vacancy, although the succeeding governor refused to commission him therefor, and after the senate's adjournment, commissioned another person.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 3. May Term 1892, Sup. Ct.; court below, No. 218 September Term 1891, C. P.

On June 30, 1891, upon a suggestion filed by Mr. W. U. Hensel, attorney general, the court below awarded a writ of quo warranto against D. J. Waller, Jr., requiring him to show by what warrant he claimed to have and exercise the office of superintendent of public instruction; whereupon, the defendant appeared and filed a plea setting up title in himself to said office. The commonwealth then demurred to the defendant's plea, except as to the eleventh paragraph thereof, to which a replication was filed.

The eleventh paragraph of the plea was as follows:

" 11. That thereupon [upon his inauguration] the said Rob-

---

ert E. Pattison, then governor of Pennsylvania, recognized and accepted the nomination and confirmation of the said D. J. Waller, Jr., as aforesaid, but withheld the commission evidencing such appointment, because of the pressure of other public duties, and in order to determine the question whether it should be issued for the full term of four years, or for the unexpired portion thereof; as stated by him to the said D. J. Waller, Jr., and others."

At the trial, on a submission to the court, without a jury, under the act of April 22, 1874, P. L. 109, the respondent offered to prove, by a witness on the stand, the averments of fact set out in the said paragraph of the plea. The offer was objected to by the commonwealth, as irrelevant and immaterial.

By the court: Offer excluded; exception.[1]

On July 16, 1891, the court, SIMONTON, P. J., filed the following decision:

From the averments and admissions contained in the pleadings, we deduce the following

### FINDINGS OF FACT:

1. James A. Beaver, then governor of the state of Pennsylvania, on May 13, 1889, by and with the advice and consent of the senate, appointed E. E. Higbee, superintendent of public instruction, for the term of four years from April 1, 1889; said Higbee duly qualified, and by virtue of his appointment and the commission issued to him, entered upon the duties of said office, and continued therein until he died, December 13, 1889, at a time when the senate was not in session, whereby said office became vacant.

2. While said office was thus vacant, and before the next session of the senate, on February 14, 1890, said governor appointed the respondent superintendent of public instruction, and on said day commissioned him "to have and to hold the said office, together with all the rights and privileges thereto belonging or by law in anywise appertaining, until the end of the next session of the senate, if he shall so long behave himself well."

3. When the senate next met, on January 6, 1891, said governor nominated respondent to the senate, for confirmation as superintendent of public instruction for the term of four years

from the first day of March, 1890, being the date on which respondent took possession of said office under the appointment first above mentioned, and on January 20, 1891, during the same session of the senate, said nomination was by the senate confirmed.

4. The term of office of said James A. Beaver, as governor, expired on January 20, 1891, and Robert E. Pattison was on said day duly inaugurated as governor of this commonwealth, prior to the particular session of the senate at which the nomination above stated was confirmed.

5. No commission was issued by Robert E. Pattison, governor, to respondent, in pursuance of the nomination and confirmation by the senate above stated, nor was any further action taken in the matter until May 27, 1891, when said governor nominated to the senate Z. X. Snyder, to be superintendent of public instruction for the term of four years from June 1, 1891, and on May 28, 1891, the senate, refusing to advise and consent to said nomination, rejected it.

6. The senate finally adjourned on the same day, May 28, 1891, and on the next day, May 29, 1891, the governor appointed and commissioned said Z. X. Snyder to be superintendent of public instruction from said day, May 29, 1891, until the end of the next session of the senate, which is still in the future.   Said Z. X. Snyder accepted said commission and duly qualified, and on June 3, 1891, demanded possession of said office of superintendent of public instruction from respondent, who refused, and still refuses, to deliver the same to him, and at the date of the commencement of these proceedings respondent held and still holds, said office.

Certain averments of matters of fact were made in one paragraph of the plea filed on behalf of respondent, which were denied in the replication filed on behalf of the commonwealth. An offer made on the trial to prove these facts, was objected to by the learned attorney general, on the ground that they were irrelevant and immaterial.   This objection was sustained by the court, and a bill of exceptions was sealed for the respondent.   The facts thus offered to be proved are therefore not in the case at present, and hence are not found.[2]

### DISCUSSION.

The legal questions supposed by counsel to be involved in

these facts and raised by the pleadings will appear in the course of this opinion. They were discussed with great ability and thoroughness by the learned attorney general and his able deputy on behalf of the commonwealth, as well as by the eminent counsel who represent the respondent, and must now be considered by the court.

The answers to be given to these questions depend mainly upon the proper construction and meaning of § 8, article IV. of the constitution, which is as follows: . . . . .

It is contended on behalf of respondent, as stated by counsel in their brief, that:

"By this provision, there is the absolute power to fill a vacancy happening during a recess of the senate, in the office of superintendent of public instruction. The general language of the first clause of the quoted portion, is subject to the exception contained in the second clause; and the two together will be read that he may appoint during the recess of the senate to vacancies by granting commissions which expire at the end of their next session, except in the case of certain enumerated officers, to wit, auditor general, state treasurer, secretary of internal affairs, and superintendent of public instruction, judicial offices, etc. If a vacancy happens in any of these offices in a recess, no vote of the senate is necessary, and no limitation is placed upon the commission, except in case of elective offices, in which case provision is made according as the vacancy happens within, or more than three months before the next election. The superintendent of public instruction not being an elective office and no limitation being placed upon the commission, the power is conferred, in case of a vacancy happening during a recess of the senate, to appoint for the full vacancy.

"There is absolutely no power to fill for less than the period of such vacancy, nor can he make two appointments which in succession may fill such vacancy; the superintendent being irremovable at the pleasure of the governor, according to § 4, article VI. of the constitution. He can exercise the power of appointment to a vacancy but once, and then only for the full constitutional period.

"The language of the constitution being that the governor shall have power to fill any vacancy that may happen, during

Decision of Court below.

the recess of the senate, in the office of the superintendent of
public instruction, and no limit being placed upon the appoint-
ment as to when it shall expire, the language naturally imports
that the appointment shall fill the entire vacancy once for all,
otherwise, in some succeeding part of the article it would have
indicated the limitation by express language.   The earlier part
of the section provides for the filling of appointive offices un-
til the expiration of the next session of the senate.   In the
succeeding clause, one appointive office is expressly named, to
which the appointment in case of vacancy is made to fill the
vacancy without any limitation or restriction to a less period
of time than would be covered by the full extent of the vacan-
cy.   The governor not only has the power to completely fill
the vacancy, but it is his duty to make the appointment, and
for the entire period of the vacancy.

" It is quite clear that Governor Beaver intended to exercise
his full constitutional duty in the case, and to appoint, for all the
time that he had power to appoint.   This is evidenced, not only
by the fact that he made the appointment and issued his com-
mission therefor, but also by the fact that as soon as the senate
was assembled he presented the name of Mr. Waller for the
fullest period possible, dating from the time of the original ap-
pointment, to wit, March 1, 1890.   This indicates a completed
purpose to appoint, so far as his action was concerned, for the
entire period for which appointment was supposed to be pos-
sible."

This proposed construction of the constitution, and the ar-
guments brought forward in support of it, are very ingenious,
and there is certainly, to say the least, a discrepancy between
the two clauses of § 8.   The second clause ordains: " He (the
governor) shall have power to fill any vacancy that may happen
during the recess of the senate in the office of . . . . . super-
intendent of public instruction."   This gives absolute power to
the governor to fill any vacancy in the office of superintendent
of public instruction occurring during the recess of the senate,
without limitation as to time.   But the first clause ordains:
" He shall have power to fill all vacancies that may happen in
offices to which he may appoint, during the recess of the senate,
by granting commissions which shall expire at the end of their
next session ; " thus limiting the time for which an appointment

made during the recess of the senate shall continue, in the same office of superintendent of public instruction, as it is an office to which "he may appoint" and is therefore included in the phrase "all vacancies." If full force and effect be given to the language of the first clause, the term of an appointment to fill a vacancy made during the recess must be limited to the end of the next session ; while, if the second clause be taken literally and given full effect, the whole vacancy is to be filled. And if the second is not taken literally, it is, so far as the office of superintendent of public instruction is concerned, entirely superfluous and must be wholly disregarded, as it does not add anything whatever to the provision made in the first clause for filling a vacancy in the office.

It will be observed that all the offices mentioned in the second clause, except that of superintendent of public instruction, are elective offices ; and it has been suggested that the office of superintendent of public instruction was inserted in the second clause, because, and at a time in the course of the proceedings in the constitutional convention when it was intended to make that office an elective office, and that the failure afterwards to strike it out was a mere inadvertence ; and some color is given to this suggestion by the contents of the journal and the debates of the convention. [Be that as it may, it is there, and the question remains, whether it can be ignored ? But we cannot give any force to it, without ignoring the provisions in the first clause limiting the time for which appointments can be made to fill vacancies happening during the recess to the end of the next session.] [3]

The only construction we are able to suggest that might give force to both clauses, would be to hold that there was given to the governor alternate power to appoint at his discretion for the one term or the other. But it is not probable that the framers of the constitution would have intentionally done this.

We do not consider the proper construction of these clauses free from doubt, but, assuming the spirit of the constitution to be that appointments should not be made by the governor alone, when there is opportunity to consult the senate, we are not prepared to hold that the second clause weakens the force of the first.

We may remark, by the way, that there is the same variance

between the language of § 8, article IV., and § 25, article V., with respect to filling vacancies which may happen in judicial offices. Section 8, article IV., as we have seen, provides that the governor "shall have power to fill any vacancy that may happen during the recess of the senate . . . . . in a judicial office ; . . . . . if the vacancy shall happen during the session of the senate, the governor shall nominate to the senate before their final adjournment a proper person to fill said vacancy ;" while § 25, article V., provides: " Any vacancy happening by death, resignation, or otherwise, in any court of record, shall be filled by appointment by the governor." The first of these requires the nomination to be made to the senate, if the vacancy occurs during the session, while the last directs that the vacancy shall be filled simply by appointment by the governor.

It is contended, in the second place, on behalf of respondent, as stated in the brief of counsel, that:

" Even if the governor, in the appointment of Mr. Waller, could only appoint to the expiration of the next session of the senate, the subsequent nomination of Mr. Waller, January 6, 1891, and its confirmation, January 20, 1891, constitute, in the light of the facts, a full and complete appointment for the full term."

This involves a question which has not often arisen, for the reason that in most cases the power of removal exists in the power that appoints, and, therefore, the question when an appointment became complete is of little consequence, as in any event a second appointment would be held to revoke the first. There have been, however, cases in which the question has been more or less directly involved, and the decisions have not been uniform. In Dyer v. Bayne, 54 Md. 87, the question was, when an appointment took effect, and the court held that it dated from the confirmation and related back to the time of the nomination. The court said:

" The senate was under no restriction as to the time within which it should act upon the nomination; and having confirmed the nomination during the regular session, the appointment was complete from the time of such confirmation : United States v. Bradley, 10 Pet. 343. The governor had no discretionary power over the appointment after confirmation, nor had he power to withhold the commission; for the issuing of the

Decision of Court below.

commission was a mere ministerial act. The efficient and only discretionary act of the govenor, in making the appointment, was in making the nomination; and the senate having no other power over the nomination than to concur or non-concur in it, the act of the governor became complete and effective with the concurrence of the senate, and it related back to the time of the nomination. The act of the senate, and the subsequent ministerial act of the governor, in issuing the commission, both related to the principal act of the governor in making the nomination; the commission being evidence only of the appointment."

The language of the constitution of the state of Maryland is the same as that of this state: "He shall nominate, and by and with the advice of the senate appoint." It has, also, the further clause: "All civil officers appointed by the governor and senate shall be nominated to the senate."

In Johnson v. Wilson, 2 N. H. 202 (9 Am. Dec. 50), it is said by WOODBURY, J.: "On general principles, the choice of a person to fill an office constitutes the essence of his appointment. After the choice, if there be a commission, an oath of office, or any ceremony of inauguration, these are forms only, which may or may not be necessary to the validity of any acts under the appointment, according as usage and positive statute may or may not render them indispensable."

This question was discussed in Marbury v. Madison, 1 Cranch 137; but the point expressly decided was that under the constitution of the United States, which requires the president to commission all officers of the United States, the appointment to an office was complete when the commission was signed by the president, although withheld and not delivered to the appointee. The constitution of Pennsylvania does not in terms require the issuing of a commission except in special cases, and certainly, so far as elective officers are concerned, the title to the office does not in any degree depend upon the existence of a commission. The chief justice of the Supreme Court is such by virtue of a provision in the constitution itself, and would be such if no commission were issued to him.

Several other cases have been cited, on behalf of respondent, in support of the position that the appointment is complete when confirmed by the senate, but we do not think it necessary

to refer to them in detail. Attention has been called to the
fact that the language of § 8, article IV., is, "In *confirming* or
rejecting the nominations of the governor, the vote shall be
taken by yeas and nays and shall be entered on the journal."
On the other hand, a number of cases, and several opinions
of attorney generals of the United States, have been cited on
behalf of the commonwealth, to show that the appointment is
not complete until a commission is signed by the appointing
power.

The commonwealth, however, relies principally upon Lane
v. Commonwealth, 103 Pa. 481. The question in this case
was whether the governor alone had power to remove the re-
corder of the city of Philadelphia, who was conceded to be one
of the officers whom he was authorized by the constitution and
the law to appoint, by and with the advice and consent of the
senate ; the constitution providing that "appointed officers,
other than judges of the courts of record and the superin-
tendent of public instruction, may be removed at the pleasure
of the power by which they shall have been appointed." On
behalf of Lane, it was contended that the appointment was the
joint act of the governor and the senate, and that, therefore,
the governor alone could not remove him. In answer to this
position, and as tending to show that the power of appoint-
ment was in the governor alone, MERCUR, C. J., delivering the
opinion of the court, said :

"As already shown, the constitution declares in § 8 cited,
the governor shall *nominate* and he shall *appoint*. Before he
completes the appointment, the senate shall consent to his ap-
pointing the person whom he has named. It may prevent an
appointment by the governor, but it cannot appoint. It may
either consent or dissent. That is the extent of its power.
There its action ends. It cannot suggest the name of another.
If it dissent, the governor cannot appoint the person named.
If it consent, he may or may not at his option make the ap-
pointment. If for any reason his views as to the propriety of
the proposed appointment change, he may decline to make it.
That option is not subject to the will of the senate. Until the
governor executes the commission, the appointment is not
made. Prior to that time, at his mere will he may supersede
all action had in the case : Marbury v. Madison, 1 Cranch 137 ;
Story on Const., § 1540."

Decision of Court below.

It is contended by the counsel for respondent that what is here said as to the option of the governor to appoint after the nomination has been confirmed, is merely dictum. It is true, that was not the precise point decided, for it might well be said that the governor is the sole appointing power, even if the appointment were complete as soon as confirmed, especially in view of the additional reason given in the next paragraph of the opinion, from other language in § 8. But, in using the language quoted, the chief justice was speaking for the court, and making what is there said to be one of the grounds of the decision, and therefore, however it might be in the same court, we consider the conclusion to which it leads binding on us, and therefore adopt it.

It is averred in the third paragraph of the suggestion filed by the attorney general, " that during the recess of the senate, to wit, on the twentieth day of May, A. D. 1891, the Hon. Robert E. Pattison, then governor of the state of Pennsylvania, by virtue of the power vested in him by the constitution and laws of this commonwealth, commissioned Z. X. Snyder as superintendent of public instruction in and for the commonwealth of Pennsylvania, the commission to compute from the twenty-ninth day of May, 1891, and to continue until the end of the next session of the senate of the commonwealth of Pennsylvania, which session has not yet convened; that the said Z. X. Snyder accepted his said commission and qualified for the duties of said office, and on the third day of June, A. D. 1891, demanded possession of the said office of superintendent of public instruction in and for the commonwealth of Pennsylvania from said D. J. Waller, Jr., who refused and still refuses to deliver the same to him."

This is admitted in paragraph 12 of the plea of respondent, wherein it is further averred : " That the said Robert E. Pattison, governor as aforesaid, had previously during the session of the senate immediately preceding said last mentioned appointment, to wit; upon the twenty-seventh day of May, A. D. 1891, nominated the said Z. X. Snyder to the said office of superintendent of public instruction, for the term of four years, to be computed from the first day of June, A. D. 1891; and on the twenty-eighth day of May, A. D. 1891, the senate, then in session, and having considered the same, refused to advise or

consent to the nomination or appointment so made, and the said nomination was thereupon rejected by the senate."

The matters of fact alleged by this plea are admitted by the demurrer, and the validity of the appointment of Z. X. Snyder is thus put in issue; and respondent contends, as set forth in paragraph 13 of his plea, "that by reason of the said nomination by the said governor, and the rejection thereof by the senate, the senate having refused to advise or consent to said nomination, the said Z. X. Snyder was not eligible to appointment as such superintendent of public instruction, nor was the governor legally authorized to make any appointment to said office, after the adjournment of the senate and during the succeeding recess thereof, under the constitution and laws of this commonwealth."

On the other hand, the learned counsel for the commonwealth claim, as stated in their brief, that "after the senate adjourns, the governor has undoubted right to commission the person rejected by the senate, and there is no intimation anywhere in the constitution restricting his right in this matter." The only case cited to sustain this position is Strobach's Case, 20 Fed. R. 379. The facts in that case were that during the recess of the senate, the president, as he had the right to do, suspended a United States marshall named Osborn, and appointed one Strobach to fill the vacancy caused by this suspension until the end of the next session of the senate. After the senate met, he nominated Strobach for permanent appointment to the office, but the senate rejected the nomination. Thereupon, it was claimed on behalf of Osborn that this rejection annulled his suspension and the temporary appointment of Strobach, and therefore that he (Osborn) was entitled to retake possession of the office. But the court held that the nomination and rejection of Strobach by the senate, had no relation whatever to Stobach's temporary appointment by virtue of which he was entitled to hold the office until the end of the current session of the senate. The court said: "The statute authorizes the president to suspend and make a temporary appointment until the end of the next session of the senate, and he has done so, Mr. Strobach being that appointee, and he holds the office now under such appointment. The senate has not acted upon that temporary appointment, nor does it ap-

Decision of Court below.

pear that the senate has any power or authority under existing law to act directly upon such temporary appointment or designation."

It is therefore manifest that this case is not an authority for the position which it is cited to sustain, and we have not been referred to any case which decides that the governor has power to appoint one who has been rejected by the senate, to the same office and for the same period for which he was nominated and rejected, or any part of such period; and in the absence of authority we think the spirit and intent of the constitution forbids this to be done.

It has been argued, on behalf of the respondent, that the governor has no power, within the meaning and spirit of the constitution, to make a second temporary appointment during a second recess of the senate, after a vacancy has occurred which was temporarily filled by an appointment made when the vacancy occurred during the first recess.

It cannot be doubted that it is understood and implied in the provisions of the constitution on this subject, contained in article IV., § 8, that when a vacancy occurs during a recess of the senate, which is temporarily filled by appointment to expire at the end of the next session, a permanent appointment shall be made during such session by and with the advice and consent of the senate; but whether, when this has not been done, another temporary appointment can be made without the advice and consent of the senate, to continue until the end of the next recess,—in this case for two years,—is a question which, as we understand, is not now squarely before us, and which we, therefore, do not decide.

It is further contended, on behalf of respondent, that it is a general principle of the common law that an officer whose term has expired may hold over until his successor has been legally appointed and qualified, and that, therefore, if, as we have seen, no successor to respondent has been thus appointed and qualified, he still rightfully holds the office, even if the term for which he was appointed expired at the end of the succeeding session of the senate, and his nomination and confirmation during the session conferred no additional title.

We think it cannot be questioned that respondent, who is in by the color of right, which consists in a valid appointment,

and who is holding over after the expiration of his term, is an officer de facto, whose official acts, from considerations of public policy, are legal, valid and binding as to the public and third persons who have an interest in them, and that they cannot be questioned collaterally: State v. Carroll, 38 Conn. 449 (9 Am. Rep. 409); Hamlin v. Cassafer, 15 Ore. 456 (3 Am. St. Rep. 176), and notes to these cases.

But, if this be all respondent has to rely upon in the present case, it will avail him nothing. This is a proceeding on behalf of the commonwealth to test his title to the office; and in order to retain it, he must show, not only that he is in possession of the office de facto, but also that he has a title to it de jure, which he cannot do unless he can show that he is in during a term for which he was legally appointed and qualified, or, if the term has expired, with the legal right to hold until his successor has been legally appointed and qualified, and we understand his learned counsel to claim that he was, when these proceedings began, and is now, thus holding, on the general principle of the common law above stated.

In State v. Harrison, 113 Ind. 234 (3 Am. St. Rep. 663), it is said: "Whether or not, as a general principle of the common law, officers are entitled to hold over beyond their prescribed terms, without some express provision, is not settled upon authority, although the view adopted by the American courts seems to be that, in the absence of any restrictive provision, the officer is entitled to hold until he is superseded by the election of another person in his place;" citing a number of cases to most of which we have been referred by respondent's counsel in their brief. We have carefully examined these authorities, but have been unable to come to the conclusion that they sustain the position for which they were cited by counsel. As is said in People v. Bull, 46 N. Y. 57 (7 Am. Rep. 308), speaking of the same cases cited in People v. Oulton, 28 Cal. 44, as authority for the same position, "the authorities cited to sustain it do not fully bear it out. It is to be questioned whether they go further than that one holding an office, the incumbent of which is, by its tenure, to be annually or periodically appointed or elected, and with no restrictive provision as to the term, may hold over as stated."

This seems to be the effect of the case cited. Thus in Peo-

ple v. Runkle, 9 Johns. 147, the point decided was that where
the charter of a private religious corporation provided that the
annual election for trustees should be held at least six days
before vacancies should happen, an election held less than that
number of days before the happening of the vacancies, was
valid. The court says : " It is unnecessary to contend, in this
case, that the trustees hold over after the expiration of the
year. Perhaps the language of the statute is too peremptory,
that the seats of one third are to be 'vacated at the expiration
of every year.' But the corporation is not thereby dissolved;"
citing Queen v. Corporation of Durham, 10 Mod. 146, where
it is said " that though the town clerk be annuatim eligibilis,
he remained the town clerk after the year, and until another
was chosen ; but if he had been eligibilis pro uno anno tantum,
his office would have expired at the end of the year."

All that was decided in Trustees v. Hills, 6 Cow. 23 (16
Am. Dec. 429), another case cited on behalf of respondent,
was that the title of the plaintiffs, who claimed to be trustees
of a religious corporation, but who were elected after the regu-
lar period, could not be collaterally questioned by defendants.
Chandler v. Bradish, 23 Vt. 116, decides only that, there be-
ing no statute to the contrary, and such having been the prac-
tice, school officers elected at the annual meeting hold over till
others are elected at another annual meeting, whether more or
less than a year from the time of their election ; and McCall
v. Byram Manuf. Co., 6 Conn. 428 ; Cong. Soc. v. Sperry,
10 Conn. 20, and State v. Fagan, 42 Conn. 32, are to the same
effect.

Chancellor Kent, 2 Com. 295, says: " It is a question not
definitely settled whether officers of a corporation who are
directed to be annually elected, continue in office after the
year and until others are duly elected, in cases where the time
of election under the charter has elapsed either through mis-
take, accident or misfortune, and there is no provision in the
charter for the case." He adds that the acts of all public of-
ficers, who are such de facto, acting under color of office by
election or appointment, " are held valid as respects the rights
of third persons who have an interest in them, and as concerns
the public, in order to prevent a failure of justice."

Dillon, in 1 Mun. Corp., § 158, says : " The American courts

have not adopted the strict rule of the English corporations, which disables the mayor or chief officer from holding beyond the charter or election day, but rather the analogy of the other corporate officers, who hold over until their successors are elected, unless the legislative intent to the contrary be manifested." And in § 159, he says : " The law on the subject has been thus stated by a learned American judge, (Perkins, J., in Tuly v. State, 1 Ind. 500,) ' Where, in the charter or organic law of a corporation, there is an express or implied restriction upon the time of holding office, as that the officers shall be annually elected on a particular day, and that they shall hold from one charter (election) day till the next, or that they shall be elected for the year ensuing only, in such case they cannot hold over beyond the next election day or the end of the year.' "

The above are practically all the cases cited by the counsel for the respondent, on this branch of the case, and our examination of them leads us to the conclusion thus expressed by Chancellor WALWORTH, in Philips v. Wickham, 1 Paige, 594: " There are undoubtedly some common-law officers who are to be elected or appointed periodically, who from the necessity of the case continue to exercise their functions until others are elected or appointed to fill their places. I am not aware of any general principle of the common law which authorizes all civil or corporate officers to hold over after the expiration of the time for which they were elected until their places are supplied by others."

On the other hand, in Kroh v. Smoot, 62 Md. 172, where, by the constitution, it is provided that the commission issued on the appointment made during the recess of the senate, " shall continue in force until the end of the next session of the legislature, or until some other person is appointed to the office, whichever shall first occur," the court said : " We are not justified in totally disregarding the express limitation that the commission to the party appointed by the governor during the recess, to fill the vacancy, ' shall continue in force until the end of the next session of the legislature, or until some other person is appointed to the same office, whichever shall first occur.' These terms are imperative, and they must have accorded to them their full force and effect. And, as by this limitation the appointment and commission of the appellee

Decision of Court below.

terminated with the end of the last legislature, it follows that from that time there was a vacancy in the office until a successor was appointed as provided by the constitution to fill such vacancy."

In Badger v. United States, 93 U. S. 599, Justice HUNT, delivering the opinion of the court, said : " By the common law, as well as by the statutes of the United States and the laws of most of the states, when the term of office to which one is elected or appointed expires, his power to perform its duties ceases.    This is the general rule.    The term of office of a district attorney of the United States is fixed by statute at four years.    When these four years come around, his right or power to perform the duties of the office is at an end as completely as if he had never held the office : Rev. Stat., § 769.    A judge of the Court of Appeals of the state of New York, or a justice of the Supreme Court, is elected for a term of fourteen years, and takes his seat on the first day of January following his election.    When the first day of the fourteenth January is reached, he ceases to be a judicial officer, and can perform no one duty pertaining to the office.    Whether a successor has been elected, or whether is qualified, does not enter into the question."

Section 769 of the Revised Statutes, cited in the above extract, is as follows : " District attorneys shall be appointed for a term of four years and their commissions shall cease and expire at the expiration of four years from their respective dates." This, it will be observed, is practically the same language as is used in § 8, article IV., providing that the governor may fill vacancies " by granting commissions which shall expire at the end of the next session."

[We feel ourselves obliged to hold, on this review of the cases, that respondent has not shown a valid title as against the state, to the office in question now held by him.] [4]

This case was heard by both members of the court, and they concur in the following

### CONCLUSIONS OF LAW :

1. [The provisions of § 8, article IV. of the constitution, would not have authorized the governor to appoint respondent during the recess of the senate, to the vacancy which occurred during such recess, for a longer period than until the end of the next session of the senate.] [5]

Arguments.

2. [No title to the office of superintendent of public instruction was vested in respondent by his nomination by the governor to the senate, January 6, 1891, and the confirmation of said nomination by the senate, January 20, 1891, no further action having been taken thereon by the governor and no commission having issued.] [6]

3. [The only appointment by which a title to said office was conferred upon respondent being by a commission which, by its terms and by the provisions of the constitution, was to expire at the end of the next session of the senate, and such next session having ended, respondent has no legal title to said office.] [7]

4. [Judgment of ouster, in favor of the commonwealth and against respondent, is therefore directed to be entered, unless exceptions be filed within the time limited by law.] [8]

—To the foregoing decision, the respondent filed exceptions alleging that the court erred:

2. In refusing the respondent's offer of evidence.[1]

3. In not finding the facts averred in par. 11 of the plea.[2]

4, 5. In the portions of the decision embraced in [ ] [3] [4]

6–9. In the conclusions of law embraced in [ ] [5] to [8]

10. In not finding that the respondent had shown a valid title.[9]

11, 12. In not directing judgment to be entered for the respondent, and in directing judgment of ouster to be entered in favor of the commonwealth.[10] [11]

On September 29, 1891, after argument thereof, the exceptions filed were overruled, and judgment of ouster directed to be entered in accordance with the decision theretofore filed. Whereupon, the respondent took this appeal, specifying for error:

1–11. The overruling of the respondent's exceptions.[1] to [11]

*Mr. Robert Snodgrass, Mr. C. W. Stone* and *Mr. W. S. Kirkpatrick*, for the appellant:

1. The purpose of the clause in § 8, article IV. of the constitution, mentioning the superintendent of public instruction, evidently was to withdraw the specified office from the operation of the general provision limiting the duration of commissions granted during a recess of the senate, and to give all

the words effect we must so understand it.   It plainly provides that the governor shall have the power to fill any vacancy which may happen in that office, for the full period of the vacancy.   When the two clauses, referred to by the court below as contradictory, are examined and compared, they can thus be reconciled and rendered consistent under the established rules of construction applied to statutes and constitutions :  Endlich on Statutes, §§ 23, 399, 515 ;  Cooley on Const. Lim., § 58;  Warren v. Sherman, 5 Tex. 441;  San Francisco etc. R. Co. v. Board of Equalization, 13 Am. & Eng. R. Cas. 248.   The plain meaning is that an appointment during a recess does not require action by the senate.

2.  On the principle of construction laid down in Commonwealth v. Slifer, 25 Pa. 23, the appointment in such a case should be made for the full term of four years ;  or, if not, then it must cover the unexpired term of the former incumbent. There is no power to appoint for less than the period of the vacancy, nor can two appointments be made which in succession may fill the vacancy.   The superintendent being made irremovable at the pleasure of the governor, by § 4, article VI. of the constitution, he can exercise the power of appointment to a vacancy but once, and then only for the full constitutional period.   That Governor Beaver intended to appoint for all the time he had power to appoint for, appears not only from the appointment and commission of the defendant, but also from the fact that when the senate was assembled he presented the defendant's name for the fullest period possible, to date from the time of the original appointment.

3.  That the commission, on its face, purports to limit the duration of the defendant's tenure of the office, cannot defeat the legal effect of the appointment, the governor having no power to prescribe a different term from that fixed by the constitution :  Commonwealth v. Slifer, 25 Pa. 23 ; Mechem on Public Officers, § 395.   Nor could his subsequent nomination of the defendant to the senate, under a mistaken impression as to the effect of the original appointment, operate as a revocation or recall of it :  Mechem on Public Officers, §§ 110, 113 ; Thomas v. Burrus, 23 Miss. 550 (57 Am. Dec. 154).   At all events, the defendant is entitled to hold the office until his successor is appointed and qualified, under a general principle

of the common law, there being nothing to the contrary in the constitution : Angel & Ames on Corp., 83 ; People v. Stratton, 28 Cal. 382; People v. Oulton, 28 Cal. 44 ; People v. Runkle, 9 Johns. 147 ; Trustees v. Hills, 6 Cow. 23 (16 Am. Dec. 429); Dillon on Mun. Corp. 219; People 'v. Bull, 46 N. Y. 57 (7 Am. Rep. 302) ; Chandler v. Bradish, 23 Vt. 116 ; Overseers v. Sears, 22 Pick. 130; State v. Harrison, 113 Ind. 234; McCaull v. Manuf. Co., 6 Conn. 428; Cong. Soc. v. Sperry, 10 Conn. 20 ; State v. Fagan, 42 Conn. 32.   No such appointment has yet been made, Mr. Snyder being ineligible after his rejection by the senate : Lane v. Commonwealth, 103 Pa. 485; and, moreover, there was no power to make a temporary appointment after the adjournment of the senate : In re District Attorney, 7 Am. L. Reg., N. S., 786.

4. Even if the appointment of the defendant was limited to the expiration of the next session of the senate, his subsequent nomination at that session, and its confirmation, constitute, in the light of the facts, a full and complete appointment for the full term.   In so far as the opinion in Lane v. Commonwealth, 103 Pa. 485, advances the view that after confirmation an appointment is still incomplete and subject to withdrawal or recall, it is only dictum.   What was said seems to have been influenced by Marbury v. Madison, 1 Cranch 137, the differences between the federal constitution and statutes, and the constitution of our state, not having been observed.   Under the latter, the appointment is complete when confirmed by the senate ; while under the former, it is incomplete until the person is commissioned.   Moreover, our constitution speaks of the action of the senate as a *confirmation,* and no such language is found in the federal constitution.   In Dyer v. Bayne, 54 Md. 87, under a constitutional provision similar to that in force in this state, it was held that the appointment is complete when confirmed, and that the governor has no power to withhold the commission.   See also State v. Barbour, 53 Conn. 76 (55 Am. Rep. 65); Hoke v. Field, 10 Bush. 144 (19 Am. Rep. 58); Saunders v. Owen, 12 Mod. 200 (2 Salk. 467) ; Commonwealth v. Halloway, 44 Pa. 216 ; Commonwealth v. Pattison, 109 Pa. 165.

*Mr. W. U. Hensel,* Attorney General, (with him *Mr. Jas. A.*

Arguments.

*Stranahan*, Deputy Attorney General), for the Commonwealth :

1. By its own terms, as well as by the express provisions of the constitution, the commission issued to the defendant expired at the end of the next senatorial session. It is a well established rule that a public officer appointed for a specified term, cannot hold over beyond that term, unless there is an express provision of law allowing it: People v. Tiernan, 30 Barb. 193 ; Badger v. United States, 93 U. S. 601; People v. Bull, 46 N. Y. 57 (7 Am. Rep. 308) ; Kroh v. Smoot, 62 Md. 172; Brooke v. Commonwealth, 86 Pa. 167 ; Commonwealth v. King, 85 Pa. 111. It has always been held, both in the federal and the state governments, that a person who has been commissioned ad interim to an office becoming vacant during a recess, and who fails to receive senatorial confirmation at the succeeding session, becomes functus officio at its close, and, if he is to exercise the office afterwards, requires a new commission. Such a construction is the only reasonable and consistent one that can be put upon § 8, article IV. of the constitution.

2. If the construction contended for by the appellant were to prevail, it would follow that the senate could be deprived continuously of the exercise of its constitutional right to consent to or dissent from executive nominations for the office in question. The incumbent could resign and create a vacancy during a recess, and then his successor could be commissioned for four years, so that vacancies would thereafter regularly occur during recesses. The contention that the defendant can still hold his office, because the governor has commissioned Dr. Snyder whose nomination the senate previously refused to confirm, hardly admits of serious discussion. In Lane v. Commonwealth, 103 Pa. 485, the court did not intimate more than that the governor cannot appoint, that is commission permanently, a nominee rejected by the senate. After the senate has adjourned, he has undoubted right to commission such person temporarily, and the reasoning of the opinion in Strobach's Case, 20 Fed. R. 379, is to this effect. Our position that the defendant cannot hold over, is sustained by the opinion of Attorney General Speed in 2 Op. Atty. Gen. 286 ; by that of Mr. Stansberry in 12 Idem, 130 ; and by 2 Story on Const., §§ 1555, 1557, 1558. This is so, irrespective of the validity of Dr. Snyder's title. ·

3. The contention that the defendant got a new commission, and a clear title, from his second appointment and its subsequent confirmation, is directly in the face of leading authorities to the contrary. If, after having commissioned a person during a recess, the president or governor, when the senate is assembled " nominates the same officer to the office, this is to all intents and purposes a new nomination to office, and, if approved by the senate, the appointment is a new appointment, and not a mere continuation of the old appointment. So that, if a bond of fidelity in office has been given under the first appointment and commission, it does not apply to any acts done under the new appointment and commission : " 2 Story on Const., § 1558 ; United States v. Kirkpatrick, 9 Wheat. 733. Being a new appointment, it is not complete until the nominee has been commissioned : Lane v. Commonwealth, 103 Pa. 481 ; Marbury v. Madison, 1 Cranch 137 ; Buckalew on Const., 110 ; Commonwealth v. Hanley, 9 Pa. 518; Adams's Case, 12 Op. Atty. Gen. 304; United States v. Le Baron, 19 How. 73 ; Coxe's Case, 4 Op. Atty. Gen. 217. Commonwealth v. Pattison, 109 Pa. 165, related to an elective office.

OPINION, MR. CHIEF JUSTICE PAXSON :

This was a writ of quo warranto, issued at the relation of the attorney general, directed to D. J. Waller, Jr., requiring him to show by what authority he claims to exercise the duties of superintendent of public instruction of the commonwealth of Pennsylvania. The facts may be briefly stated as follows :

On the fourteenth day of February, 1890, Governor Beaver appointed and commissioned the respondent, D. J. Waller, Jr., as superintendent of public instruction, vice E. E. Higbee, deceased. In pursuance of this appointment, the respondent duly qualified, entered upon the performance of the duties of said office, and has continued therein until this time. The senate was not in session at the time of this appointment. The next session of the senate thereafter began on the first Tuesday of January, 1891; and on the sixth day of the same month, James A. Beaver, being still governor, nominated the respondent to the senate for confirmation to said office for the term of four years, to date from the first day of March, 1890, and on the twentieth day of the same month (January) the senate

confirmed such nomination and appointment. It is a part of the history of the case that Governor Beaver went out of office on the said twentieth day of January, and Robert E. Pattison was on the same day duly inaugurated as governor in his place. No commission was issued to the respondent by Governor Pattison. On the contrary, he appointed one Z. X. Snyder to said office, which apppointment was rejected by the senate on May 28, 1891. On the day after the senate adjourned, the governor appointed and commissioned said Snyder to said office for the full term of four years, notwithstanding his rejection by the senate.

With the validity of the latter appointment we have nothing to do. Our inquiry is merely as to the right of the respondent to hold the office.

There are three things about which there is no dispute, viz. : (a) There was a vacancy; (b) the vacancy was filled by appointment by the governor; and (c) the governor's appointee was confirmed by the senate. How long is the respondent entitled to hold the office under this appointment and confirmation by the senate?

For the solution of this question we must look to article 4, § 8, of the constitution, which provides :

" He (the governor) shall nominate, and, by and with the advice and consent of the two thirds of all members of the senate, appoint a secretary of the commonwealth and an attorney general, during pleasure, a superintendent of public instruction for four years, and such other officers of the commonwealth as he is or may be authorized by the constitution or by law to appoint. He shall have power to fill all vacancies that may happen in offices to which he may appoint, during the recess of the senate, by granting commissions which shall expire at the end of their next session. He shall have power to fill any vacancy that may happen during the recess of the senate in the office of auditor general, state treasurer, secretary of internal affairs, or superintendent of public instruction, in a judicial office, or in any other elective office which he is or may be authorized to fill; if the vacancy shall happen during the session of the senate, the governor shall nominate to the senate before their final adjournment a proper person to fill said vacancy, but in any such case of vacancy in an elective office a person

shall be chosen to said office at the next general election, unless
the vacancy shall happen within three calendar months imme-
diately preceding such election, in which case the election for
said office shall be held at the second succeeding general
election."

This clause of the constitution is by no means clear. It will
be noticed, however, that there are two classes of vacancies to
be filled by appointment by the governor, viz., those that relate
to elective offices, and those that are non-elective. In the
former, the governor can only fill a vacancy until such time as
the people can fill it by an election as provided by law. Hence
the commission of the governor can run no further. In the
other case, non-elective offices, no time is designated during
which his appointee can hold, except the single provision that, if
a vacancy shall occur during the recess of the senate, he shall
be commissioned until the expiration of the next session. This
simply means that his appointee to this class of offices shall be
confirmed by the senate ; otherwise his incumbency expires with
its adjournment. But if confirmed, he is entitled to hold for
the balance of the unexpired term. He appoints to fill the va-
cancy. What is the vacancy? Clearly the term of office left
unfilled when not otherwise provided for. Governor Beaver
exercised this power ; he filled the vacancy occasioned by the
death of Higbee, and his appointee having been confirmed by
the senate, the respondent is in office by virtue of an appoint-
ment properly made under the constitution and laws of the
state. The confirmation of respondent by the senate necessa-
rily extends his original appointment for the balance of the
unexpired term.

> The judgment is reversed, and judgment is now
> entered in favor of the respondent.