COM. ex rel. LAFEAN v. SNYDER et al., Appel. 57

1918.]                          Syllabus.

# Commonwealth ex rel. Lafean v. Snyder et al., Appellants.

*Constitutional law—Constitution of Pennsylvania, Article IV, Section 8—Public officers—Banking commissioner — Nomination by governor—Rejection by senate—Appointment by governor after adjournment of senate—Validity — Constitutional construction — Refusal of auditor general to pay salary — Mandamus — Parties plaintiff—Act of June 8, 1893, P. L. 345—Action at relation of banking commissioner—Practice, C. P.*

1. Under the Act of June 8, 1893, P. L. 345, Section 4, providing, inter alia, that when a mandamus proceeding "is sought to enforce a duty affecting a particular public interest of the State, it shall be on the relation of the officer entrusted with the management of such interest," such a proceeding is properly brought in the name of the Commonwealth on the relation of a banking commissioner against the auditor general and State treasurer to compel the payment of the commissioner's salary, which was refused on the ground that he had not been legally appointed by the governor. While the relator has also a private interest in his salary, yet the payment of his compensation, as well as the payment of other expenses of his office, is a necessary incident to the administration of the affairs of the department, and, being paid out of public funds, is a matter of public concern and the duty of the officials having charge of such payment is a public duty.

2. To the general rule that title to public office cannot be inquired into by mandamus proceedings there is an exception where there are no conflicting claimants to the office, but there is involved merely a question of right to salary, which in turn depends upon whether claimant properly holds office.

3. A constitution is to be construed in the popular and ordinary sense of the language used, and in the light of the circumstances attending its formation, so as to give effect to the intent of the framers and of the people in adopting it, and also with a view to carry out the general principles of government.

4. In construing particular clauses of the Constitution, it is but reasonable to assume that in inserting such provisions the convention representing the people had before it similar provisions in earlier constitutions in this and other states, which it used as a guide; and that in adding to or subtracting from the language of such constitution, the change was made deliberately and was not merely accidental.

58    COM. ex rel. LAFEAN *v.* SNYDER et al., Appel.

Syllabus—Arguments.    [261 Pa.

5. A court has no right to instruct the governor as to matters which involve his duty only and not his power.

6. There is a presumption that a public official will not abuse his trust or act with a view to evading the duties of his office.

7. Where the senate has rejected the nomination by the governor to an office subject to his appointment, the governor may, under authority of Article IV, Section 8, of the Constitution, after the adjournment of the senate, appoint the rejected nominee until the end of the next session of the senate; but the governor cannot make an appointment of such person for a full or unexpired term without the advice and consent of two-thirds of all the members of the senate.

*Practice, Supreme Court—Statement of questions involved—Absence of assignment of error covering question.*

8. A question not raised in the assignments of error will not be considered by the Supreme Court although it appears in the statement of the questions involved.

Mr. Chief Justice BROWN, Mr. Justice POTTER and Mr. Justice MOSCHZISKER dissent.

Argued Jan. 7, 1918. Appeal, No. 10, May T., 1917, by defendants, from judgment of C. P. Dauphin Co., 1917, Commonwealth Docket No. 140, awarding mandamus in case of Commonwealth of Pennsylvania ex rel. Daniel F. Lafean, Commissioner of Banking, v. Charles A. Snyder, Auditor General, and Harmon M. Kephart, Treasurer of the Commonwealth of Pennsylvania. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Petition for mandamus. Before KUNKEL, J.

The opinion of the Supreme Court states the facts.

The court awarded a mandamus as prayed for. Defendants appealed.

*Error assigned* was in awarding the mandamus.

*Hampton L. Carson,* with him *Harry S. McDevitt, C. P. Rogers, Jr.,* and *Gabriel H. Moyer,* for appellant.— The governor had no power to make the appointment

COM. ex rel. LAFEAN v. SNYDER et al., Appel.    59

1918.]                    Arguments.

which is challenged: Lane v. Commonwealth, 103 Pa. 481; Commonwealth v. Waller, 145 Pa. 235.

The title of the relator to the office cannot be considered in this proceeding.

*Francis Shunk Brown,* Attorney General, with him *Wm. H. Hargest,* Deputy Attorney General, and *Wm. H. Keller,* Deputy Attorney General, for appellee.—The court below did not err in ruling that the Commonwealth was a proper party plaintiff, as the duty sought to be enforced affects a particular public interest: Commonwealth ex rel. Bell v. Powell, 249 Pa. 144; Commonwealth ex rel. The Attorney General v. Mathues, 210 Pa. 372.

A presumption exists that the governor in granting the commission acted within his legal authority: Conklin v. Cunningham, 38 Pac. 170; Eldodt v. Territory ex rel. Vaughn, 61 Pac. 105.

The power of the governor to grant such commissions is conferred by Article IV, Section 8, of the Constitution of this Commonwealth: People of North Carolina ex rel. Battle v. McIver, 68 N. Car. 467; Henry E. Bartlett, 9 How. Pr. Rep. (N. Y. 1854) 414.

Ten years before our Constitution, congress had construed a similar provision of the Federal Constitution and recognized the right of the President of the United States to give an ad interim appointment to one rejected by the senate for a full term: Act of February 9, 1863, Chapt. 25, 12 Stat. 646, Section 3228.

The existence of the power is further evident from the construction of a similar provision of the Constitution of the United States, by Congress, by the Department of Justice, and by the President. The courts have likewise confirmed the power of the governor in this particular: State ex rel. Robert v. Murphy, 13 So. 705 (Fla. 1893); State v. Kuhl, 51 N. J. Law 191, 17 Atl. Rep. 102; State ex rel. Fritts v. Kuhl, 51 N. J. Law 191; 17 Atl. Rep. 102.

60    COM. ex rel. LAFEAN *v.* SNYDER et al., Appel.

Opinion of the Court.        [261 Pa.

OPINION BY MR. JUSTICE FRAZER, April 3, 1918:

On April 24, 1917, Daniel F. Lafean, the relator, was appointed commissioner of banking to fill a vacancy occurring during a session of the State senate, and subsequently the governor forwarded the nomination for the regular term. The senate rejected the nomination, and shortly after its adjournment the governor reappointed him to fill the vacancy and to serve until the end of the next session of the senate. The appointee entered upon the duties of his office and subsequently filed with the auditor general a requisition for salary, which the latter refused to honor on the ground that claimant did not legally hold office. Lafean thereupon filed a petition for a mandamus against the auditor general and State treasurer to compel them to approve and pay the requisition for salary due him. An alternative writ was issued, and, upon argument, judgment was entered against defendants and peremptory writ awarded, from which defendants appealed.

Before entering into a discussion of the principal question in the case, to wit, the right of the governor to appoint to fill a vacancy one whom the senate has rejected for appointment for the regular term, we will consider and dispose of the questions of practice and procedure raised by appellants.

The first assignment of error is to the conclusion of the court below that the Commonwealth is a proper party plaintiff. Counsel for appellants have furnished no argument in support of this assignment and apparently have little faith in the merits of their contention. The Mandamus Act of June 8, 1893, P. L. 345, Section 4, provides: "When the writ is sought to procure the enforcement of a public duty, the proceeding shall be prosecuted in the name of the Commonwealth on the relation of the attorney general: Provided however, That said proceeding in proper cases shall be on the relation of the district attorney of the proper county: Provided further, That when said proceeding is sought to enforce a duty

affecting a particular public interest of the State, it shall be on the relation of the officer entrusted with the management of such interest. In all other cases the party procuring the alternative writ shall be plaintiff, the party to whom said writ is directed shall be defendant." There can be no doubt that the present proceeding is brought to enforce a public duty and also one affecting a public interest, namely, the banking department of the Commonwealth, and therefore is properly brought in the name of the Commonwealth on the relation of the commissioner of banking. While the relator has also a private interest in his salary, yet the payment of his compensation, as well as the payment of other expenses of his office, is a necessary incident to the administration of the affairs of the department, and being paid out of public funds is a matter of public concern, consequently, the duty of the officials having charge of such payment is a public duty. The case of Commonwealth ex rel. v. Mathues, 210 Pa. 372, a proceeding in the name of the Commonwealth to compel the State treasurer to pay the salaries of certain Common Pleas and Orphans' Court judges, would seem to conclusively settle this question against appellants.

Appellants also contend relator's title to office can be inquired into in this proceeding. The conclusion of the court below to the effect that this case is an exception to the general rule, that the title to office cannot be determined in mandamus proceedings for the reason that there are no conflicting claimants to the office, but merely a question of right to salary, which in turn depends upon whether claimant properly holds office, was in accord with appellants' contention, therefore a discussion of the question is unnecessary. Furthermore, the question is not raised in the assignments of error and for that reason has no place in the statement of the questions involved. The second assignment complains of the refusal of the court below to sustain the objection that there was an adequate remedy at law. This assignment is not

* 62    COM. ex rel. LAFEAN *v.* SNYDER et al., Appel.

Opinion of the Court.                    [261 Pa.

pressed in the argument, nor is the question included in the statement of questions involved. Its consideration, therefore, is unnecessary.

The main question in the case is whether the governor had the power to appoint relator to fill the vacancy which existed after the senate had rejected his nomination for the regular term. Section 2 of the Act of February 11, 1895, P. L. 4, provides: "The chief officer of the banking department shall be denominated the commissioner of banking. He shall be appointed by the governor, by and with the advice and consent of the senate, and shall hold his office for the term of four years and until his successor is duly qualified."

Article IV, Section 8, of the Constitution of Pennsylvania, provides that the governor "shall nominate and, by and with the advice and consent of two-thirds of all the members of the senate, appoint......such......officers of the Commonwealth as he is or may be authorized by the Constitution or law to appoint; he shall have power to fill all vacancies that may happen, in offices to which he may appoint, during the recess of the senate, by granting commissions which shall expire at the end of their next session;......if the vacancy shall happen during the session of the senate, the governor shall nominate to the senate, before their final adjournment, a proper person to fill said vacancy." It thus appears the governor is authorized to fill a vacancy temporarily until the end of the next session of the senate, but not for a full or unexpired term without the advice and consent of the senate. Appellants do not contend that the vacancy in question was one that had not "happened" during the recess of 'the senate, though it in fact arose while the senate was in session, but base their argument squarely on the contention that the governor could not fill the vacancy, however or whenever arising, by appointing one whom the senate had previously rejected for that office.

The constitutional provision places no express limitation upon the choice of the governor in appointing to fill

COM. ex rel. LAFEAN *v*. SNYDER et al., Appel.    63 .

1918.]                Opinion of the Court.

vacancies.    He is accordingly the sole judge of the qualifications of the appointee, unless an implied restriction is placed upon this power by reason of the grant of power to the senate to reject an appointee to fill a regular or unexpired term.    Did the people, in adopting the constitutional provision in question, place an implied limitation upon the power of the governor to fill vacancies by reason of also having provided that appointments for regular terms of service, or for unexpired terms, should require the approval of the senate?    Or, to state the question in a different form, does it follow that the people, in requiring the consent of the senate to appointments for regular or unexpired terms of service, intended that a rejection by the senate of an appointee necessarily eliminated him from the list of possible appointments for filling the temporary vacancy created by such rejection without express words to that effect?    If this question be answered in the affirmative, it is pertinent to inquire how long must the disqualification of the rejected person continue.    Is it for the succeeding vacancy only, or does it disqualify him and consequently limit the power of the governor for all time?    The existence of these further questions which would follow a construction in favor of appellants' contention, and the failure of the Constitution to provide an answer to them, must necessarily have a bearing on the interpretation of the intent of the people as indicated in the language of the provision in question.

A Constitution is to be construed in the popular and ordinary sense of the language used, and in the light of the circumstances attending its formation, so as to give effect to the intent of the framers and of the people in adopting it, and also with a view to carry out the general principles of government: Commonwealth v. Clark, 7 W. & S. 127; Cronise v. Cronise, 54 Pa. 260; Commonwealth v. Bell, 145 Pa. 374.

In construing particular clauses of the Constitution it is but reasonable to assume that in inserting such provisions the convention representing the people had be-

64   COM. ex rel. LAFEAN v. SNYDER et al., Appel.

fore it similar provisions in earlier constitutions, not only in our own State but in other states which it used as a guide, and, in adding to, or subtracting from, the language of such other constitutions the change was made deliberately and was not merely accidental. A consideration of the earlier constitutions, of this State throws no light on the subject. The Constitution of 1790 gave the governor no power to fill vacancies, while the Constitution of 1838 contained a provision quite similar to that inserted in the present organic law. Turning to the constitutions of other states for assistance we find a majority of them, like our own, do not contain restrictions on the power to fill vacancies. On the other hand, the constitutions of seven states, namely, Illinois, Georgia, Louisiana, Maryland, West Virginia, Nebraska and Texas have express provisions to the effect that the governor shall not, during the same session of the senate, appoint to fill a vacancy a person who has been rejected by the senate, thus impliedly recognizing the necessity of such provision if power to make such appointment is to be withheld. No case has been cited which holds authoritatively that, in absence of such express restriction on the power of the governor, he cannot appoint to fill a vacancy a person who has been rejected by the senate. On the contrary, under Article II, Section 2, Clause 3, of the Federal Constitution, which gives the President power to fill "Vacancies that may happen during the recess of the senate, by granting commissions which shall expire at the end of their next session," Congress recognized the power of the President to reappoint to fill a vacancy, after rejection of the appointee by the senate, for a full term by adding to the army appropriation bill of February 9, 1863, (Vol. 4, U. S. Comp. Stats. 1916, Section 3228) a clause that "No money shall be paid from the treasury, as salary, to any person appointed during the recess of the senate, to fill a vacancy in any existing office, if the vacancy existed while the senate was in session and was by law required to be filled

by and with the advice and consent of the senate, until such appointee has been confirmed by the senate," the reason for this being, no doubt, as stated in the debate in the senate, that while it may not be within the power of the senate to prevent such appointment it had the power to prevent payment of the salary incident to the office, which would probably put an end to the habit of making such appointments.  In 1886 President Cleveland nominated a person for office in the District of Columbia and, after his rejection by the senate, appointed the same person to fill the vacancy, and in our own State Governor Pattison in 1891 reappointed two persons following their rejection by the senate, which action was upheld by the then attorney general of the Commonwealth, Honorable William U. Hensel, as indicated in an opinion to the Honorable Henry K. Boyer, State treasurer, as follows: "I am in receipt of your favor of July 29th, inquiring whether you are authorized and justified in paying the salaries and expenses of the factory inspector and his appointees, and suggesting that the validity of such payments might be questioned because, you say, Robert Watchorn, the present factory inspector, was 'appointed by the governor during the session of the senate and rejected by that body and again appointed after its adjournment.'  In reply I beg leave to say that, in my opinion, the appointment of Robert Watchorn as factory inspector by Governor Pattison, was a valid appointment; that he holds and exercises said office rightfully; that his official acts are valid and binding, and certainly that the validity of his appointment cannot be questioned collaterally by you, and that you are justified and authorized in recognizing him and his warrants as those of a de facto and de jure officer." That case is identical in all respects with the one now before us and, while the opinion of the attorney general is not binding upon this court, his interpretation of the question is strongly persuasive.

There are no Pennsylvania decisions which give ma-

terial assistance with respect to the question before us. Lane v. Commonwealth, 103 Pa. 481, is cited by appellants. The question in that case was as to the power of the governor to name an officer. No question of appointment was before the court, much less a question of appointment of a person who had been rejected by the senate for a full term. In the course of the opinion of the court it is said, in discussing the respective powers and duties of the governor and the senate, (page 485) : "As already shown, the Constitution declares in section 8 cited, the governor shall nominate and he shall appoint. Before he completes the appointment the senate shall consent to his appointing the person whom he has named. It may prevent an appointment by the governor, but it cannot appoint. It may either consent or dissent. That is the extent of its power. There its action ends. It cannot suggest the name of another. If it dissent the governor cannot appoint the person named. If it consent he may or may not, at his option, make the appointment. If for any reason his views as to the propriety of the proposed appointment change, he may decline to make it. That option is not subject to the will of the senate. Until the governor executes the commission, the appointment is not made. Prior to that time at his mere will, he may supersede all action had in the case: Marbury v. Madison, 1 Cranch 137; Story's Con., Sec. 1540." The above statement that "If it [the senate] dissent the governor cannot appoint the person named," viewed in the light of the question under discussion, undoubtedly referred to the regular or unexpired term for which the appointment was made. The question of the subsequent appointment of the rejected person was not before the court.

In Commonwealth v. Waller, 145 Pa. 235, also relied upon by appellants, the question was whether one whose appointment had been confirmed by the senate had a right to hold office, though not commissioned previous to the expiration of the term of office of the governor who

appointed him.   While it appeared the succeeding governor appointed another person for the same office, and, upon his rejection by the senate, reappointed him for the full term, the court said (page 256) : "With the validity of the latter appointment we have nothing to do.   Our inquiry is merely as to the right of the respondent to hold the office."   The lower court in discussing the right of the subsequent appointee said (page 246) : "We have not been referred to any case which decides that the governor has power to appoint one who has been rejected by the senate, to the same office and for the same period for which he was nominated and rejected, or any part of such period; and in the absence of authority we think the spirit and intent of the Constitution forbids . this to be done."   The question was not discussed by the appellate court, and, furthermore, as the reappointment was for the full term, even the language of the lower court was in part dictum.

. Pritts v. Kuhl, 51 N. J. L. 191, appears to be the only decision directly in point, although in that case the discussion in the opinion is based mainly on the meaning of the phrase "vacancy happening during the recess of the legislature."   The governor nominated a judge to fill a vacancy occurring while the senate was in session. That body refused to confirm the nomination, and, subsequently, during the recess of the legislature, the rejected person was appointed to fill the vacancy.   In holding this appointment valid it was said (page 208) : "The propriety of the appointment of Mr. Kuhl, after his rejection by the senate, was a question for the governor alone. This court has no right to instruct the governor as to matters which involve his duty only and not his power. We cannot know the circumstances which influenced his action, and must presume that he acted rightly."

A careful consideration of the argument and authorities cited by counsel for appellants fails to convince us that in framing the Constitution it was intended to limit by implication the choice of the governor in filling va-

68    COM. ex rel. LAFEAN *v.* SNYDER et al., Appel.

Opinion of the Court.                    [261 Pa.

cancies.    It is of no avail to say that to permit the ap-
pointment of one who has been rejected for a full term
would in effect enable the governor to evade the consti-
tutional requirements.    We cannot assume a public of-
ficial will abuse his trust (Lane v. Commonwealth,
supra), or act with a view to evade the duties of his
office.    The presumption is to the contrary: Mansel v.
Nicely, 175 Pa. 375.    In Fritts v. Kuhl, supra, it is said
(page 205) : "The argument of those who deny the power,
that it will tend to deprive the senate of their just par-
ticipation in appointments to office, is not of controlling
force.    It is not logical to argue from an abuse of power
to a negation of it.    Every authority, however indis-
pensable, may be the subject of abuse.    Undoubtedly the
governor may abuse this, as he may any other power en-
trusted to him, but the argument is equally cogent, that
the senate may arbitrarily refuse to consent to every
nomination made by the governor, and leave him power-
less to execute the laws, unless he will accede to its de-
mands.    The consequences likely to flow from a denial
of the governor's power are much more to be depricated
than those that can result from conceding it."    On page
206 of the same opinion the court further says: "The pos-
sibility of abuse loses its significance the moment we
distinguish between power and duty.    The question of
power alone can be considered by this court.    For wil-
ful breach of official duty, or abuse of the power com-
mitted to him, the governor is, like other civil officers,
liable to impeachment, and must answer to the tribunal
erected under the Constitution for the trial of such cases.
Even though the governor should be guilty of a breach
of duty in refusing to send any nomination at all to the
senate, during its session, it would be none the less with-
in his power and his duty, after the adjournment, to fill
the vacancy.    In that case, the impeachable conduct
would be his wilful refusal to advise with the senate,
and not his act in filling the vacancy in the after recess."

Judgment is affirmed.

COM. ex rel. LAFEAN *v.* SNYDER et al., Appel.    69

1918.]                    Dissenting Opinion.

DISSENTING OPINION BY MR. CHIEF JUSTICE BROWN:

What the Constitution forbids, may not be done, and its inhibitions need not always be expressed, for they are equally effective and not less to be regarded when they arise by necessary implication: Page v. Allen, 58 Pa. 338; Commonwealth ex rel. v. Heck, 251 Pa. 39; Story on the Constitution, Section 424. In construing a Constitution its words are to receive their popular, natural and ordinary meaning: Commonwealth v. Bell, 145 Pa. 374; Keller v. Scranton, 200 Pa. 130; Raff v. Philadelphia et al., 256 Pa. 312. When these two propositions are borne in mind there is no escape, it seems to me, from the conclusion that the governor's appointment of the appellee as commissioner of banking, to serve until the expiration of the next session of the senate, after he had been rejected by that body at its late session, was in clear, palpable and plain disregard and defiance of Section 8, Article IV, of the Constitution. The words of that article can have but one meaning to a layman, and, if this be so, how can a different one be given to them by the courts, whose duty it is to read them as they are popularly, naturally and ordinarily understood?

During the session of the senate the governor could have appointed the appellee commissioner of banking only with the advice and consent of two-thirds of the members of that body. He sought such advice and consent by nominating him for the said office, but the nomination was rejected, and its rejection was, in effect, a declaration by the senate that the nominee should not serve as commissioner of banking for the succeeding four years. This action of the senate did not disqualify him generally for appointment as such commissioner, but meant merely that it would not consent to his appointment to serve for a certain period. In so acting the senate exercised a power expressly conferred upon it by the Constitution as a check upon the appointing power, and yet immediately after it adjourned the governor, in the face of its rejection of his nominee, ap-

pointed him to the office which it had just declared he should not then fill.   If the Constitution may be thus circumvented, the executive may do indirectly what that instrument forbids his doing directly, for he can make appointments against the advice and consent of the senate; and this is just what has been done in the present case.    The average man, with the constitution of his state before him, couched in clear and plain terms, will hardly be able to understand how one whose name had been submitted by the governor to the senate, as required by the Constitution, for confirmation as his appointee to a certain office, and had been rejected by the senate, can, as soon as that body adjourns, be constitutionally appointed to the same office, the vacancy therein having been caused by the rejection.    If this can be done, a license will be given to every succeeding governor to fill every appointive office for a full term, not only without the advice and consent of the senate, but against them.    The check upon his appointing power will be gone, for he may, at the two regular sessions of the senate held during his term of office, do just what the present executive has done, and, by appointing rejected nominees after each adjournment of the senate, the appointees would be given full terms of at least four years, for each appointment would extend to the end of the next session of the senate. As to this, it was said by the very learned Judge CADWALADER, in speaking of the constitutional provision in the Federal Constitution relating to appointments by the President: "Thus he might, though the senate were in session when the vacancy first occurred, or had sat since it thus occurred, appoint, in the recess, an officer who would be objectionable to the senate if in session— and might, in disregard or defiance of the senate, continue him in office indefinitely": In re Attorney of the United States, 2 Cadwalader's Cases, U. S. District Ct., 138, 148.

As the rejection of the appellee was for a full term of

four years, it covered every portion of that term.   Majus dignum trahit ad se minus dignum.

None of our cases support the conclusion reached by the majority of the court, and it is so admitted.   In Fritts v. Kuhl, 51 N. J. L. 191, the case upon which reliance is placed in sustaining the action of the court below, the question involved in this case was not discussed either in the argument of counsel or in the opinion of the court.   The sole question there was whether there had been an actual vacancy which had happened during a recess of the legislature, and the discussion turned entirely upon what was meant by the words of the Constitution of New Jersey, "a vacancy happening during a recess of the legislature."

While the question before this court in Lane v. Commonwealth, 103 Pa. 481, was the governor's power of removal, we said, through Mr. Chief Justice MERCUR: "As already shown, the Constitution declares in section 8 cited, the governor shall nominate and he shall appoint. Before he completes the appointment the senate shall consent to his appointing the person whom he has named. It may prevent an appointment by the governor, but it cannot appoint.   It may either consent or dissent.   That is the extent of its power.   There its action ends.   It cannot suggest the name of another.   If it dissent the governor cannot appoint the person named."   In Commonwealth v. Waller, 145 Pa. 235, one of the contentions of the Commonwealth in the court below was that "after the senate adjourns, the governor has undoubted right to commission the person rejected by the senate." In answer to this the Honorable JOHN W. SIMONTON, late president judge of the twelfth judicial district, whose learning and ability are remembered and will not soon be forgotten, said: "We have not been referred to any case which decides that the governor has power to appoint one who has been rejected by the senate. to the same office and for the same period for which he was nominated and rejected, or any part of such period; and

72    COM. ex rel. LAFEAN *v.* SNYDER et al., Appel.

Dissenting Opinion.                [261 Pa.

in the absence of. authority we think the spirit and in-
tent of the Constitution forbid this to be done." While
these words may be regarded as obiter dicta, because not
pertinent to the question then before the court, they are
entitled to a very great weight as the unqualified view of
an eminent jurist upon the precise question involved in
this appeal. In my judgment they correctly state the
law.

For the reasons stated, the writ of mandamus should
have been refused, for the appointment of the appellee
was forbidden by clear, necessary implication, by Sec-
tion 8, Article IV, of the Constitution. In this dissent,
which I cannot withhold, from the contrary view enter-
tained by a majority of the court, my brothers POTTER
and VON MOSCHZISKER concur.