Ritenour, Appellant, *v.* Peirce.

Argued January 13, 1971. Before BELL, C. J., JONES, EAGEN, ROBERTS, POMEROY and BARBIERI, JJ.

*Harold Gondelman,* for appellant.

*James D. Morton,* with him *Buchanan, Ingersoll, Rodewald, Kyle & Buerger,* for appellee.

OPINION BY MR. JUSTICE POMEROY, February 2, 1971:

The Constitution of Pennsylvania, as last amended in 1968, provides that county officers (in counties other than Philadelphia) shall consist, *inter alia,* of prothonotaries and "clerks of the courts". Article IX, Sec. 4. By Section 15 of the Schedule of Article V,

these two offices were defined, until otherwise provided by law, as "the offices of prothonotary and clerk of courts of the court of common pleas of the judicial district. . . ." The case before us is a dispute as to whether under the new Constitution Robert N. Peirce, Jr., appellee, is the legally appointed and qualified clerk of the court of common pleas of the judicial district comprised of Allegheny County.[1]

---

[1] In making the so-called "row offices" required parts of county government (except in Philadelphia County which is separately treated), the Constitution of 1968 was continuing without change the provision of the Constitution of 1874. The Commission on Constitutional Revision appointed by Governor Leader pursuant to the Act of July 15, 1957, P. L. 927, sometimes referred to as the "Woodside Commission" (its chairman having been Robert E. Woodside, former judge of the Superior Court) recommended elimination of the detailed enumeration of county offices as being essentially legislative in nature and causing undue rigidity and diffusion of responsibilities in county government. (Report of the Commission dated March 9, 1959, relative to Article XIV, Sec. 1, pp. 48 and 50.) This recommendation was endorsed by the Pennsylvania Bar Association and included in its "A Revised Constitution for Pennsylvania (Project Constitution)", 34 Pa. Bar Ass'n. Quarterly, No. 2A, pp. 310, 311 (January 1963), and by the Governor's Commission on Constitutional Revision (Report of the Commission appointed by Governor Scranton, of which William A. Schnader was Chairman, issued January 24, 1964, pp. ix and 67).

In the Second Class County Code (applicable to Allegheny County), the clerk of courts is described as "clerk of the court of quarter sessions and of the court of oyer and terminer". Act of July 28, 1953, P. L. 723, art. IV, §401, 16 P.S. §3401. This reflected the fact that this officer was, in effect, the clerk of the criminal courts, whereas the clerk of the common pleas court was the prothonotary. There was also a separate clerk of the orphans' court. Because the Constitution of 1968 created in each judicial district a single court of original jurisdiction known as the court of common pleas (Art. V, Sec. 5), there are no longer separate criminal courts in any county. See Schedule to Judiciary Article, Sections 4, 16(o) and 17(a). In Allegheny County, however, there is by statute a criminal division of the court of common pleas. Act of December 2, 1968, P. L.     , §2, 17 P.S. §235.2. The clerk of courts of Alle-

The facts have been stipulated: In November, 1968, appellant Ritenour was appointed "first deputy" in the office of the Clerk of Courts of Allegheny County by Thomas E. Barrett, the Clerk of Courts.[2] A first deputy, "during the necessary or temporary absence of his principal", is directed to "perform all the duties of such principal"; in addition, "in case of a vacancy", he is to perform such duties "until a successor is qualified".[3] At the municipal election in November, 1969, Mr. Barrett was re-elected for a second term in office, but died on November 17, 1969 before qualifying for his second term, which would have commenced in January, 1970. (The Senate of Pennsylvania was in session on the date of Mr. Barrett's death.) On November 20, 1969, Ritenour posted a bond required for the office of clerk of courts, and took an oath of office as "acting clerk of courts".[4]

In February, 1970, Governor Shafer nominated Mr. Peirce to be Clerk of Courts and submitted his name to the Senate for confirmation. The Senate took no action on the nomination, and on November 19, 1970, adjourned.[5] On December 1, 1970, during the Senate

---

gheny County is now in effect clerk of the criminal division of the court of common pleas.

[2] The appointment of a first deputy is provided for by the Second Class County Code, *supra*, Sec. 1304, 16 P.S. §4304.

[3] *Ibid.*, Sec. 408, 16 P.S. §3408.

[4] This is a statutory prerequisite to the execution of duties by a person temporarily succeeding to a county office. *Ibid.*, par. (b). A new bond was posted and new oath taken by Ritenour as of January 5, 1970, presumably intended to be applicable in what would have been the second term of Mr. Barrett, which would have commenced the first Monday of January, 1970.

[5] The resolution for adjournment which the Senate adopted was as follows: "RESOLVED (the House of Representatives concurring) that when the Senate adjourns this week it reconvene at the call of the President Pro Tempore and when the House of Representatives adjourns this week it reconvene at the call of the Speaker of

adjournment, the Governor appointed Peirce as Clerk of the Court of Common Pleas of Allegheny County and issued his commission as such, said appointment to run from December 1, 1970, until the first Monday of January, 1972, and until his successor shall be duly qualified. Peirce took the oath of office and filed the requisite bond on December 8, 1970. He then sought physical possession of the office in the County Court House so that he could undertake his duties as Clerk of Courts, but Ritenour refused to surrender possession or to allow Peirce to enter upon the performance of his duties.

Before us in this suit is a complaint in quo warranto brought by Ritenour to determine the person entitled to hold the office in question. Suit was brought promptly after Peirce's appointment, and was pending on December 8 when Ritenour refused to give up possession of the clerk's office. On December 16, 1970, President Judge ELLENBOGEN held that the appointment of Peirce was proper, lawful and effective, that Peirce had duly qualified for the office and was entitled to exercise the duties thereof until a successor is elected and shall qualify. He accordingly dismissed the complaint. Upon petition of Ritenour Judge ELLENBOGEN granted supersedeas pending appeal.

Two principal questions are presented for our consideration: First, does the Governor of Pennsylvania have the power to appoint a successor to the deceased Clerk of Courts of Allegheny County, or is appellant Ritenour as the first deputy Clerk of Courts entitled to continue to act as the Clerk of Courts until the office is filled by municipal election? Second, if the Gov-

---

the House of Representatives." We take judicial notice of the fact that the Senate reconvened on the first Tuesday of January, 1971, in accordance with the mandate of Article II, Sec. 4, of the Constitution.

ernor has such power, has he exercised it in accordance with the Constitution and laws of this Commonwealth? Our answers are that the Governor had power to appoint to fill the Barrett vacancy, and that he properly exercised it. We accordingly affirm the decision of the court below.

## I.

We start with the Constitution. Having established the required officers of county government, Article IX, Sec. 4 goes on to provide that (except for public defenders) the officers shall be elected at the municipal elections "and shall hold their offices for the term of four years, beginning on the first Monday of January next after their election, and until their successors shall be duly qualified; *all vacancies shall be filled in such a manner as may be provided by law.*" (Emphasis added.) As noted above, if a vacancy occurs in the office of clerk of courts of a county of the second class, the law (Second Class County Code) provides that the deputy to the clerk shall "perform all the duties of" the clerk "until a successor is qualified". 16 P.S. §3408. Ritenour has been performing such duties as acting clerk of courts since Barrett's death, and asserts he is entitled to continue to do so until Barrett's successor is qualified *by election.* The heart of the controversy before us, therefore, is whether Peirce, the appointee of the Governor, is a successor who has qualified, or whether only a person elected at the next municipal election can be such a successor.

Ritenour's argument that a successor to a clerk of courts must be chosen by election is based on the Second Class County Code provision for the election of county officers, including clerks of court, and which stipulates that the term of office is ". . . four years and until his successor is elected and qualified. . . ." (Em-

phasis added.)[6] Thus Ritenour argues that, as deputy to Barrett, he became entitled on Barrett's death to serve not only the unexpired portion of Barrett's first term, but also to serve until such time as a successor to Barrett shall have been elected and qualified. In practical effect, this would mean the first Monday of January, 1972, since the next municipal election will occur in November, 1971.

Such a reading of the Act of 1953 is fallacious. Section 1301 of the Act speaks only to the length of the term of office of a county officer and provides for election to such offices every four years. The words "until his successor is elected and qualified" are normal and customary words to indicate that the four year term may be extended if for any reason a person is not elected at the election preceding the expiration of the term, or if for any reason a person who is elected does not become qualified.[7]

Section 1301 of the Second Class County Code applies to elected officers, not to a deputy who is performing the duties of his principal on a temporary basis. Ritenour confuses the *power to act* in the case

---

[6] Act of July 28, 1953, P. L. 723, Art. XIII, §1301, 16 P.S. §4301, the full text of which is as follows: "At the municipal election preceding the expiration of the term of office of any prothonotary, clerk of the court of quarter sessions, clerk of the court of oyer and terminer . . . of the county and quadrennially thereafter, the electors of the county shall elect a person to fill such office from the first Monday of January next succeeding such election, for a term of four years and *until his successor is elected and qualified. . . ."* (Emphasis added.)

[7] Barrett is a good example of a person who, while duly elected (to succeed himself) never became qualified for a second term because his death intervened. Had he been about to succeed an elected incumbent other than himself, that incumbent would have remained in office until his successor should be elected and have qualified. Commonwealth ex rel. *Matthews v. Lomas,* 302 Pa. 97, 153 Atl. 124 (1930).

of his principal's absence, death or resignation, which he was rightfully exercising until December 8 last, with the *right to hold the office* itself. The section of the Code immediately following that defining the right of a deputy clerk to act provides in relevant part: "In case of a vacancy happening by death . . . in any county office created by the Constitution or laws of this Commonwealth, and where no other provision is made by the Constitution or by the provisions of this act to fill the vacancy, it shall be the duty of the Governor to appoint a suitable person to fill said office. . . ."[8] It is clear to us, reading these sections together, that the legislature was making provision both for a temporary filling of a vacant office by a first deputy, and for a permanent filling (until the next municipal election) by appointment of the Governor or, absent such appointment, by election.

The Second Class County Code enacted in 1953 was preceded by the Act of May 2, 1929, P. L. 1278, which contained similar provisions relative to the duties of a deputy clerk. That Act, in turn, repealed the Act of February 12, 1874, P. L. 43, 17 P.S. §1512. The 1874 Act authorized the deputy to discharge the duties of his principal "until *the appointment and qualification of his successor.* . . ." (Emphasis added.) From the elimination in the later statutes of the words "appointment and", appellant argues that the legislature in 1929 and again in 1953 showed its intention to eliminate also the right of appointment of a successor. On the contrary, the amendment referred to broadened the

---

[8] Act of July 28, 1953, P. L. 723, §409, as amended by the Act of May 29, 1968, P. L.    , §1, 16 P.S. §3409. The section goes on to provide that such appointee shall continue in office until the first Monday of January next succeeding the first municipal election which shall occur two or more months after the happening of such vacancy. It also stipulates that the appointee "shall be confirmed by the Senate if in session."

manner in which a successor clerk might be chosen. "Appointment" was a restrictive word in the Act of 1874; its deletion in the subsequent statutes allowed a successor to be selected either by appointment or by election.

## II.

Appellant's second attack on the appointment of Peirce as successor to Barrett is that, since Barrett died while the Senate was in session, the Governor had no power to make an appointment during the recess of the Senate.

We again look first to the Constitution. Article IX, Section 4, dealing with County Government, after establishing the officers of counties, their terms of office and manner of election, provides that "all vacancies shall be filled in such a manner as may be provided by law." The applicable law is again Sec. 409 of the Second Class County Code, quoted *supra*, which explicitly provides for appointment by the governor in case of a vacancy. As noted in footnote 8, "Such appointee shall be confirmed by the Senate if in session." At the time appellee was appointed, December 1, 1970, the Senate was not in session; hence confirmation was not required.

Appellant, ignoring Article IX of the Constitution, points to Article IV, Sec. 8, which relates to the appointing power of the Executive. This section authorizes the Governor, during the recess of the Senate, to fill vacancies happening, *inter alia*, "in any . . . elective office he is authorized to fill." The section then further provides as follows: "If the vacancy happens during the session of the Senate except as otherwise provided in this Constitution, he [the Governor] shall nominate to the Senate, before its final adjournment, a proper person to fill the vacancy." Since Barrett's

death occurred at a time when the Senate was in session, appellant argues, the Governor had the power to make an appointment only with Senatorial confirmation. We do not agree; the appointment here challenged was valid even if Article IV is applicable, as to which we express no opinion. The Governor did nominate a person to fill the Barrett vacancy before the Senate's adjournment; the Senate took no action in the following nine months prior to its adjournment; during the ensuing recess of the Senate the Governor made the appointment. In so doing he did all that he was required to do under Article IV, Section 8, and there is no indication in the Constitution that nonaction by the Senate while it is in session operates to foreclose the Governor from exercising the right, granted by the same constitutional section, to appoint during the recess of the Senate. Cf. *Commonwealth ex rel. Lafean v. Snyder*, 261 Pa. 57, 104 Atl. 494 (1918).

Appellant contends, finally, that in any event Peirce's appointive term must expire, under Article IV, Section 8 of the Constitution, at the end of the session of the Senate in 1971, and may not run until the first Monday of January, 1972, as stated in the Governor's commission. This limitation is applicable only with respect to "vacancies happening in offices to which he [the Governor] appoints". The office of clerk of courts is, as indicated at the outset, an elective one. The commission as issued was entirely consonant both with Article IV, Section 8(b) and with the Second Class County Code, Section 409, 16 P.S. §3409, heretofore quoted.

In sum, we conclude that the appellee was rightfully appointed to the office of clerk of courts of Allegheny County, and that he is now and since December 8, 1970 has been the legally qualified incumbent of that office, his appointive term to run until the first Monday of January, 1972 and until his successor shall qualify.

Order affirmed.   Costs on appellant.

Mr. Justice O'BRIEN took no part in the consideration or decision of this case.