Stroup et al., Appellants, *v.* Kapleau.
Stroup et al., Appellants, *v.* Lindsey.
Stroup et al., Appellants, *v.* McNair.
Stroup et al., Appellants, *v.* Schonek.

Argued October 2, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Bruce E. Cooper,* with him *Wm. A. Kramer, 2d,* and *Edward C. Hussie,* for appellants.

*Lawrence J. Beaser,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for Kapleau, appellee.

*Harold E. Kohn,* Special Attorney, with him *Lawrence J. Beaser,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for Lindsey, McNair and Schonek, appellees.

*Lewis H. Van Dusen, Jr.,* and *Drinker, Biddle & Reath,* for Philadelphia Judicial Council, amicus curiae.

OPINION BY MR. JUSTICE MANDERINO, December 28, 1973:

After the 155th Session of the General Assembly of the Commonwealth of Pennsylvania adjourned sine die on December 28, 1971, the following appointments to office were made by the Governor of the Commonwealth of Pennsylvania, Milton J. Shapp. Appellee, Richard W. Lindsey, was appointed as a member and chairman of the Pennsylvania Board of Probation and Parole; appellee, Harold E. Kapleau, was appointed as a member and chairman of the Pennsylvania Milk Marketing Board; appellee, Earl P. McNair, was appointed as a member of the State Tax Equalization Board of Pennsylvania; and appellee, Wilbur E. Schonek, was appointed as a member of the Pennsylvania Harness Racing Commission. Appellees, Kapleau, Lindsey, and McNair, were appointed on December 29, 1971. Appellee, Schonek was appointed on January 4, 1972.

The appellants, Senators Stanley G. Stroup, Richard C. Frame, and Richard A. Tilghman, members of the Senate of the Commonwealth of Pennsylvania, brought actions in quo warranto in the Commonwealth Court challenging the right of the appellees to hold their appointed offices without the advice and consent of the Senate pursuant to article IV, section 8(b), of the Pennsylvania Constitution. Preliminary objections filed by the appellees were sustained and the appellants' complaints were dismissed. *Stroup v. McNair,* 5 Pa. Commonwealth Ct. 244 (1972); *Stroup v. Schonek,* 5 Pa. Commonwealth Ct. 257 (1972); *Stroup v. Lindsey,* 5 Pa. Commonwealth Ct. 338 (1972); *Stroup v. Kapleau,* 5 Pa. Commonwealth Ct. 362 (1972). The cases were consolidated for the appeals which followed to this Court.

The first issue raised is whether the appellants had standing to commence this action in quo warranto. The Commonwealth Court held that they did and we agree. An action in "[q]uo warranto can be instituted to determine the title to public office only by the Attorney General, the District Attorney *or a private individual who has a special interest* as distinguished from the interest of the public generally." *Commonwealth ex rel. Specter v. Martin*, 426 Pa. 102, 108, 232 A. 2d 729, 733 (1967) (emphasis added). In *Commonwealth ex rel. Schermer v. Franek*, 311 Pa. 341, 166 A. 878 (1933), this Court stated: "To invoke the issuance of a writ of quo warranto the relator, therefore, must show in himself an interest in the controversy. . . . *He must possess some peculiar, personal interest* aside from his general interest as a member of the public." *Id*. at 345, 166 A. at 879 (emphasis added). Article IV, section 8(a), of the Pennsylvania Constitution provides: "The Governor shall appoint an Attorney General, a Superintendent of Public Instruction and such other officers as he shall be authorized by law to appoint. The appointment of the Attorney General, the Superintendent of Public Instruction and of such other officers as may be specified by law, *shall be subject to the consent of two-thirds of the members elected to the Senate.*" (Emphasis added.)

Under the above constitutional provision, each member of the Senate has an individual right to confirm or reject certain gubernatorial appointments. Each Senator has an interest in such appointments aside from that Senator's interest as a member of the general public. We, therefore, conclude that the appellants in this case, all members of the Senate of the Commonwealth of Pennsylvania, had standing to commence this action in quo warranto.

The second issue before us concerns the circumstances under which the Governor may exercise his

constitutional authority under article IV, section 8(b), to make *temporary recess appointments* which do not require confirmation by the Senate of Pennsylvania. The appellants contend that since the Governor did not attempt to make permanent appointments to those offices which had become vacant prior to the Senate's final adjournment, he could not make, thereafter, temporary recess appointments.

Prior to the final adjournment of the 155th General Assembly on December 28, 1971, three of the offices involved in this case were vacant in the sense that they were not occupied by *permanent gubernatorial appointees.* These were the offices to which appellees, Lindsey, Kapleau, and McNair, were appointed, and only these appointments are involved in this part of our discussion. Appellee Schonek's appointment was to an office which was not vacant prior to the Senate's final adjournment. The Governor did not submit any nominees for *permanent appointment* to the three offices vacant prior to the Senate's final adjournment. A permanent appointment requires the submission of a nominee to the Senate under the second sentence of article IV, section 8(b). After the Senate's final adjournment, the Governor made *temporary appointments* to these offices. Such appointments under the first sentence of article IV, section 8(b), do not require the submission of nominees to the Senate. The relevant part of article IV, section 8(b), provides: "(b) Except as may now or hereafter be otherwise provided in this Constitution as to appellate and other judges, [the Governor] may, during the recess of the Senate, fill vacancies happening in offices to which he appoints by granting commissions expiring at the end of its session and fill vacancies happening in the office of Auditor General or State Treasurer or in any other elective office he is authorized to fill. If the vacancy happens during the session of the Senate (except as otherwise

provided in this Constitution) he shall nominate to the Senate, before its final adjournment."

The above section of the Pennsylvania Constitution and another section relating to gubernatorial appointments to judicial vacancies have been before this Court on prior occasions. In *Commonwealth ex rel. Lafean v. Snyder,* 261 Pa. 57, 104 A. 494 (1918), decided over a half century ago, it was held that the Governor had the constitutional authority to make a temporary recess appointment, even though the office was vacant prior to the recess of the Senate which began at the time of its final adjournment. More recently, in *Ritenour v. Peirce,* 442 Pa. 1, 272 A. 2d 900 (1971), in an alternate ground for the decision, the rationale of *Lafean* was followed. *See Creamer v. Twelve Common Pleas Judges,* 443 Pa. 484, 491 n.2, 281 A. 2d 57, 60, n.2 (1971). In *Ritenour,* a temporary recess appointment was upheld to an office which was vacant prior to the Senate's final adjournment. The appellants have not questioned the rationale or holdings of either *Lafean* or *Ritenour.* They point out, however, that in both *Lafean* and *Ritenour,* the Governor had submitted a nominee to the Senate prior to the Senate's final adjournment. In *Lafean,* the Senate rejected the nominee and in *Ritenour* the Senate failed to act; whereas in the cases before us, the Governor did not submit nominees to the Senate prior to its final adjournment. The lack of any nominations, according to the appellants, should preclude temporary recess appointments, after the Senate's final adjournment, to offices which were vacant prior to the final adjournment.

The appellants argue that the words "shall nominate" in the second sentence of article IV, section 8(b), are mandatory and it therefore follows that the Governor's failure to nominate before final adjournment precludes a temporary recess appointment under the first sentence of article IV, section 8(b). While it is gen-

erally true, that the word "shall" in a constitution is interpreted as a mandatory provision, it does not follow that non-submission of a nominee under the second sentence precludes the Governor from exercising the authority separately granted under the first sentence which contains no specific limitation on the authority granted except as to the time limit of the temporary recess appointment. Article IV, section 8(b), does not say that submission of a nominee under the second sentence is a prerequisite to the exercise of the authority granted in the first sentence. We would have to read such a provision into the Constitution.

The appellants, as members of the legislative branch of government, have asked the judicial branch to declare an act of the executive branch to be in violation of the Constitution. In the face of constitutional challenges we have frequently said that the legislative acts of the legislative branch, the General Assembly, in which the supreme legislative power is vested (article II, section 1), are to be presumed constitutional unless clearly shown to be otherwise. The judicial branch must apply that same restraint and that same test in the face of constitutional challenges to the executive acts of the executive branch, the Governor, in whom the supreme executive power is vested (article IV, section 1). Such acts must be presumed constitutional unless clearly shown to be otherwise. In *Lafean,* this Court refused to read into article IV, section 8(b), any limitation on the Governor's explicit authority to make temporary recess appointments. The rationale of *Lafean* is applicable to this case.

In *Lafean,* the Governor's nominee was *rejected* by the Senate. The same person was then given a temporary recess appointment. The argument was made that if the Governor could make a temporary recess appointment of a person already rejected by the Senate, the constitutional provision requiring the consent of the

Senate would be meaningless. *Lafean,* nonetheless, refused to read any limitation into the constitutional authority of the Governor to make temporary recess appointments, saying that: "[t]he constitutional provision places no express limitation upon the choice of the Governor in appointing to fill vacancies." 261 Pa. at 62, 104 A. at 495. *Lafean* rejected the argument that: "the people, in adopting the constitutional provision in question [placed] an implied limitation upon the power of the Governor to fill vacancies by reason of also having provided that appointments for regular terms of service, or unexpired terms, should require the approval of the Senate." *Id. Lafean* distinguished between the Governor's authority to fill vacancies for a *temporary period* and his authority to *permanently* fill vacancies for a *full or unexpired term.* The temporary appointment authority does not require the consent of the Senate under any circumstances, because there is no such provision in the Constitution. The authority to appoint *permanently* for a full term, or the balance of an unexpired term, is the only executive authority requiring Senate consent. *Lefean* said: "It thus appears the Governor is authorized to fill a vacancy temporarily . . . but not for a full or unexpired term. . . ." *Id.*

*Lafean* concluded that the Governor's *temporary appointment authority* was separate and distinct from his *permanent appointment authority.* The former does not require Senate consent. The latter does. *Lafean* thus held that the Senate's rejection of a person for a *permanent appointment* did not have any effect on the Governor's authority to make a *temporary appointment.*

No persuasive reason has been presented as a basis for rejecting the rationale of *Lafean.* The arguments presented now are the same as those presented and rejected in 1918. Since that time, article IV, section 8

(b), has been amended and the wording changed with no indication in the changes that the Governor's authority to make *temporary appointments* was limited by the provision which subjects *permanent appointments* to Senate confirmation. In fact, the 1967 amendment to article IV, section 8(b), appears to strengthen the rationale of *Lafean*—the executive authority to appoint *temporary appointees* is distinct and separate from the authority to appoint *permanent appointees*. The 1874 Constitution said that the Governor "shall have the power to *fill all vacancies that may happen,* in offices to which he may appoint, *during the recess* of the Senate, by granting Commissions . . . ." (Emphasis added.) In the 1967 amendment, the wording of the comparable provision is that the Governor *"may, during the recess of the Senate, fill vacancies* happening in offices to which he appoints, by granting Commissions . . . ." (Emphasis added.)

The wording of the 1874 provision and the rewording under the 1967 amendment are almost identical if the two provisions are read omitting the words, *during the recess of the Senate.* The key change appears to be the relocation of the phrase, *during the recess of the Senate.* In the 1874 provision, that phrase arguably modified the phrase, *all vacancies that may happen.* The *Lafean* case specifically pointed out that possibility. The two phrases read together arguably meant that a vacancy had to happen during the recess in order for the Governor to exercise his authority to make temporary appointments. That argument has been considerably weakened, if not destroyed, by the 1967 amendment. The phrase, *during the recess of the Senate,* was relocated and now can only modify the words, [*the Governor*] *may.* The phrase cannot be read as modifying the words, *vacancies happening in offices.* The phrase, *during the recess of the Senate,* now only tells us when the Governor may temporarily appoint—

not when the vacancy must occur. This change thus strengthens the conclusion in *Lafean,* that the executive authority to make *temporary* appointments is distinct and separate from his authority to make *permanent* appointments requiring Senate confirmation.

The identical issue here raised concerning the executive's recess appointment authority was one of the issues before this Court in *Creamer v. Twelve Common Pleas Judges,* 443 Pa. 484, 281 A. 2d 57 (1971), although a different but related section of the Pennsylvania Constitution was involved.

In *Creamer,* the issue arose under article V, section 13(b), which provides for the recess appointments of members of the judicial branch of government. Fourteen members of the judicial branch had received *temporary* recess appointments. In four cases, the circumstances were the same as those before us in this appeal. The Governor had not submitted any nominees to the Senate even though the vacancies existed while the Senate was in session. Recess appointments were then made following the Senate's final adjournment. These appointments were held to be valid by an evenly divided court. (One justice did not participate.) The OPINION IN SUPPORT OF THE PER CURIAM ORDER (opinion of Justice JONES, now Chief Justice JONES, and Justice POMEROY in which Justice EAGEN joined) referred to the "wisdom" and "current validity" of *Lafean,* in refusing to read any implied limitation upon the Governor's authority to make, after the final adjournment of the Senate, *temporary* judicial appointments. The OPINION SUPPORTING IN PART AND OPPOSING IN PART RESULTS ANNOUNCED IN THE PER CURIAM ORDER (opinion of Chief Justice BELL in which Juctice O'BRIEN and Justice ROBERTS joined) did not consider *Lafean* applicable to article V, section 13(b), because, in the view of the subscribers to that opinion, the wording of article V, section 13(b), was materially different from the

wording of article IV, section 8(b). That opinion said: "The material and very important difference in language of Article V, [section 13(b)] . . . from the language in Article IV, Section 8, distinguishes these Articles and also the prior Pennsylvania cases upon which they rely, which were decided under provisions *similar to Article IV* of the present Constitution, such as Commonwealth ex rel. Lafean v. Snyder, 261 Pa. 57, 104 A. 494, or under a statute providing for the appointment of a Court clerk in a second-class County, such as Ritenour v. Peirce, 442 Pa. 1, 272 A. 2d 900, Second Class County Code, Act of May 2, 1929, P. L. 1278." 443 Pa. at 506, 281 A. 2d at 67.

In no case before this Court, in the fifty-five years since *Lefean* was decided, has there been any opinion rejecting the rationale of *Lafean*. We conclude that the Governor has the power to make temporary recess appointments whether or not he has submitted, for the Senate's approval, a nominee for permanent appointment. If, as the appellant Senators have argued, the executive authority to make temporary appointments should be limited, it is for the people, not this Court, to amend the Constitution of Pennsylvania.

The appellants' third claim involves all four appellees, and concerns the expiration time of the temporary appointments. Under the first sentence of article IV, section 8(b), temporary appointments expire "at the end of [the Senate's] session." This provision must refer to a session which *has not ended* when the temporary appointments are made. It must refer to a session which *will end after* the temporary appointments are made. Otherwise, the provision would be meaningless —calling for the expiration of a temporary appointment before the appointment is made. If, therefore, the 155th session of the General Assembly had ended when these temporary appointments were made, the constitutional provision could not be read as referring to the

155th session. The provision could only be read as referring to the end of the 156th session which would occur in the future.

Appellants argue that the 155th session did not end with the final adjournment of the Senate on December 28, 1971. This argument has been previously rejected by this Court. In *Creamer v. Twelve Common Pleas Judges,* 443 Pa. 484, 281 A. 2d 57 (1971), all the justices, although divided on other issues, agreed unanimously that the session of the Senate ends with final adjournment. As one of the opinions in *Creamer* pointed out, after final adjournment *"The Senate was not physically nor (as the entire Court agrees) technically in session."* *Id.* at 492, 281 A. 2d at 60 (emphasis added).

If a session of the Senate does not end with final adjournment but, rather, continues as the appellants argue until the exact moment that the succeeding session begins, there would be no time period between two sessions of the General Assembly. The Constitution of Pennsylvania provides for regular and special sessions of the General Assembly. Pa. Const. art. II, §§4, 8, 9, art III, §12, art. IV, §12, art. XI, §1(a). Unless a regular session ended with final adjournment, there would have been no need to provide for special sessions. The only natural reading of the many references in the Constitution to regular sessions and special sessions requires the conclusion that a regular session ends with the final adjournment of the General Assembly. We conclude, as did this Court unanimously in *Creamer,* that final adjournment ends a regular session of the legislature. When the Governor made the four (4) temporary appointments involved in this appeal, the 155th regular session of the General Assembly had already ended. Therefore, the provision in the first sentence of article IV, section 8(b), which provides that temporary appointments shall expire "at the end of

[the Senate's] session," can only refer to a Senate session ending after the appointments were made. Thus, the appointments were valid until the end of the 156th Senate session.

Appellants' fourth and last argument is that the General Assembly did not follow the proper procedure necessary for final adjournment and, thus, the attempted final adjournment on December 28, 1971, was ineffective. If no final adjournment occurred, according to the appellants, the Senate was not in recess within the meaning of article IV, section 8(b), and the Governor, therefore, could not exercise his authority to make temporary recess appointments. Appellants argue that the concurrence of the House of Representatives in the Senate's adjournment resolution was forty-five minutes late and, therefore, no final adjournment occurred. The adjournment resolution adopted by the Senate read: "RESOLVED, (the House Representatives concurring), that this 155th Regular Session adjourns Sine Die on this twenty-eighth day of December, 1971, at 10:00 o'clock P.M."

The House of Representatives acted upon the adjournment resolution of the Senate at 10:45 p.m. Appellants maintain that the concurrence by the House of Representatives had to occur on or before the 10:00 p.m. time specified in the Senate's resolution. We disagree for the reasons expressed by the Commonwealth Court: "The Senate resolution did not make time of the essence. . . . Obviously, we would have an entirely different question presented to us if the Senate, after 10:00 p.m., had acted to withdraw or recall the resolution, or if it had expressly made the Resolution of Adjournment conditioned on the concurrence being affirmatively voted by the House of Representatives prior to 10:00 p.m." *Stroup v. McNair,* 5 Pa. Commonwealth Ct. 244, 248 (1972).

We conclude that the 155th Session of the General Assembly ended by an effective final adjournment on December 28, 1971.

Since the temporary recess appointments in this case did not require confirmation by two-thirds of the Senate, the appellees' challenge to the two-thirds rule as a violation of the one-man-one-vote-rule of the Federal Constitution need not be decided in this appeal and we, therefore, express no view concerning that question.

The temporary recess appointment of the appellees, Kapleau, Lindsey, McNair, and Schonek, were a valid exercise of the Governor's authority and did not expire until final adjournment of the 156th Session of the General Assembly.

Orders affirmed.

---

CONCURRING OPINION BY MR. JUSTICE EAGEN:

I unhesitatingly agree with the conclusion of Mr. Justice MANDERINO that the failure of the Governor to seek or obtain the consent of the Senate while the Senate is in session does not affect his power to make a temporary appointment after the Senate adjourns. This conclusion is compelled by this Court's ruling in *Commonwealth ex rel. Lafean v. Snyder*, 261 Pa. 57, 104 A. 494 (1918), and by the opinion in support of affirmance in *Creamer v. Twelve Common Pleas Judges*, 443 Pa. 484, 281 A. 2d 57 (1971).

I also reiterate and subscribe to the view expressed in the opinion in support of affirmance in *Creamer v. Twelve Common Pleas Judges*, supra, namely, that the vacancy in a governor-appointed office is continually happening and that the important date, as far as both Art. IV, Section 8(b) and Art. V, Section 13(b) are concerned is the date when the vacancy is sought to be filled by an appointment and not when the vacancy first arises.

It is true that in *Creamer v. Twelve Common Pleas Judges,* supra, the Court was concerned only with the construction of Art. V, Section 13(b); however, as the opinion in support of affirmance pointed out, the differences between Art. IV, Section 8(b) and Art. V, Section 13(b) "are basically editorial changes, not changes in substance. . . ." 443 Pa. at 493, 281 A. 2d at 61.

In my view, the result reached by Mr. Justice MANDERINO is eminently correct.

I concur.

Mr. Chief Justice JONES joins in this concurring opinion.

---

CONCURRING OPINION BY MR. JUSTICE NIX:

I am constrained to respond to the dissent of Mr. Justice ROBERTS which suggests that the result reached by the majority today "effectively renders inoperative a mandatory constitutional provision." In view of the prior decisions of this Court on this subject, this criticism is completely unfounded and unwarranted.

To argue that today's result vests within the Governor "the power to whimsically and continually circumvent the constitutional requirement of Senate advice and consent" is to ignore that this Court as early as 1918 allowed the recess appointive power to be used to fill a vacancy *first* happening while the Senate was in session. *Commonwealth ex rel. Lafean v. Snyder,* 261 Pa. 57, 104 A. 494 (1918). The circumvention of Senate approval of which the dissent now complains was fully accomplished when the *Lafean* Court rendered the Senate's power of dissent impotent. I fail to comprehend the distinction the dissent now urges that we accept. In *Lafean* this Court held that Senate rejection of a nominee would not preclude the appointment under the recess power to the very office for which he had been re-

jected. That opinion clearly expressed its refusal to find an intention in the language of the 1874 section of the dominance of appointment by advice and consent that would justify a restriction upon the recess appointment by implication. More recently this Court in an alternative holding in *Ritenour v. Peirce*, 442 Pa. 1, 272 A. 2d 900 (1971), reviewing the present Art. IV, Sec. 8 found that *Lafean* was still applicable and held that the failure of the Senate to act would not restrict in any way the power to make recess appointments.

I find it now difficult to understand how we can be urged to find an implied limitation upon the exercise of recess appointments where there has been a failure to submit a nominee because of the need to preserve Senate confirmation. What are we being now asked to preserve? How is the quality of government being served by requiring the charade of seeking Senate approval and yet concluding that unless there is concurrence the Senate's deliberations may not diminish the recess appointive power an iota. The eulogy has been offered at the wrong funeral; the virtues of Senate confirmation should have been expounded for the benefit of the *Lafean* Court.

If we were faced with only a reconsideration of the earlier judicial interpretation of this constitutional provision, I would have grave difficulty in reaching the result of the *Lafean* Court and those cases which followed. But it must be remembered that our task is not the reassessment of prior judicial interpretations but rather an interpretation of the will of the people of this Commonwealth as expressed in the 1967 Amendment to the Constitution of this State. In searching for the true intent of the document the Court's theory of government must be subservient to the expressed will of the people. The prior interpretation of the former 1874 section and the adoption of the present section without significant change, forces the conclusion that

the intention was to construe the section in accordance with the principles announced by *Lafean*.* To attempt now to ignore this public mandate would be judicial over-reaching of the most offensive nature.

In light of the history of Art. IV, Sec. 8, the intention to create two separate and distinct powers in my judgment is beyond question. That one of these powers imposes a mandatory duty does not necessitate the conclusion that non-compliance must result in a withdrawal of the discretionary power. This was not an action to challenge the Governor for failure to perform a mandated duty but rather to test the title to office. For the reasons I have stated the alleged failure to perform the mandated duty, even if established, would not affect the power of recess appointment.**

---

* As pointed out in the majority opinion the only changes in the language from the former provision strengthen the *Lafean* view.

** I am in complete accord with the result and reasoning of the majority opinion on the question of standing to maintain an action in *quo warranto* and the length of the term of the appointment.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I am compelled to disagree with the anomalous result dictated by today's affirmance of the order of the Commonwealth Court.[1] Its result is totally inconsistent with the express language of Article IV, Section 8 of the Pennsylvania Constitution and effectively renders inoperative a mandatory constitutional provision.[2] This

---

[1] It is clear to me that appellant members of the Pennsylvania Senate have standing to maintain this quo warranto action. In my view, it makes no sense at all to announce that the Senators have standing to challenge the constitutionality of gubernatorial appointments and at the same time to hold, as the majority does, that such appointments are valid without Senate confirmation.

[2] Article IV, Section 8, provides:

"(a) The Governor shall appoint an Attorney General, a Superintendent of Public Instruction and such other officers as he

construction of Article IV, Section 8, grants the Governor the power to whimsically and continually circumvent the constitutional requirement of Senate advice and consent to the contested and other executive appointments. The Governor may, according to the majority's interpretation of Article IV, Section 8, make a "temporary recess appointment" which will continue until the closing of the *next* session of the Legislature. Thus, if so inclined, the Governor need never submit a permanent appointment. Recent history clearly demonstrates that governors affiliated with both political parties have disregarded this constitutional mandate.

Several of the challenged appointments were made on December 29, 1971—the day after the 155th regular session of the General Assembly adjourned sine die. Since then the next regular session of the Legislature—the 156th—also finally adjourned by virtue of the com-

---

shall be authorized by law to appoint. The appointment of the Attorney General, the Superintendent of Public Instruction and of such other officers as may be specified by law, shall be subject to the consent of two-thirds of the members elected to the Senate.

"(b) Except as may now or hereafter be otherwise provided in this Constitution as to appellate and other Judges, he may, during the recess of the Senate, fill vacancies happening in offices to which he appoints by granting commissions expiring at the end of its session and fill vacancies happening in the office of Auditor General or State Treasurer or in any other elective office he is authorized to fill. If the vacancy happens during the session of the Senate except as otherwise provided in this Constitution, he shall nominate to the Senate, before its final adjournment, a proper person to fill the vacancy. In the case of a vacancy in an elective office, a person shall be elected to the office on the next election day appropriate to the office unless the vacancy happens within two calendar months immediately preceding the election day in which case the election shall be held on the second succeeding election day appropriate to the office.

"(c) In acting on executive nominations, the Senate shall sit with open doors. The votes shall be taken by yeas and nays and shall be entered on the journal."

mand of Article II, Section 2 of the Constitution. The current regular session—the 157th— is soon to adjourn and, in any event, is constitutionally mandated to terminate at noon on January 1, 1974. Today as both the 156th legislative session and the year 1973 draw to a close, many of the unconfirmed December 1971 appointees as well as scores of others appointed shortly thereafter nevertheless continue in office without Senate confirmation.

Because of their analytical soundness, Judge MENCER'S dissenting opinions in the Commonwealth Court's consideration of these cases warrant reiteration.[3] Addressing the anomoly of effectively permanent "temporary recess appointments," Judge MENCER explained: "Assuming that the appointment in question was validly made by the Governor, I can read the language of the Constitution only to provide that the appointment expired at the end of the Senate session in which the appointment was made.

. . . .

"I comprehend the session of the Senate to be a full one-year period which may be divided into two parts by the Senate's adjournment. That period of the session prior to adjournment is designated in Article IV, Section 8, as 'the session of the Senate . . . before its final adjournment . . .' and that period of the session after adjournment is designated as 'during the recess of the Senate.' A new session commences at noon of the first Tuesday of January of each year and the former session ends at that moment.

. . . .

"The majority states that '[i]t may very well be that such was the intention of the people when they adopted

---

[3] *Stroup v. McNair*, 5 Pa. Commonwealth Ct. 244, 250 (1972); *Stroup v. Schonek*, 5 Pa. Commonwealth Ct. 257, 259 (1972); *Stroup v. Kapleau*, 5 Pa. Commonwealth Ct. 362, 364 (1972).

the new Constitution, so as to avoid what the plaintiffs assert is the circumvention of the constitutional restraint on gubernatorial appointments.' I submit it was not only the intention of the people, but it is what they accomplished in bold, clear and unequivocal language. How can a recess appointment made during the 155th session 'expiring at the end of *its* session' (emphasis supplied) mean anything other than that it will end when the Senate's 155th session ends, which time was at noon on January 4, 1972? When the words of a constitutional provision are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Stroup v. Schonek*, 5 Pa. Commonwealth Ct. 257, 259-61 (1972) (MENCER, J., dissenting).

This analysis, through which a reasonable effect is attributed to Article IV, Section 8, must certainly embody the intent of the electorate. Any other result denies effect to Section 8. It assumes that the Constitutional Convention and the people of this Commonwealth approved and ratified a meaningless provision. This conclusion is even more blatantly apparent in the majority's interpretation of "shall" as "may". Like Judge MENCER,

"I read Article IV, Section 8, to place on the Governor the mandatory duty to submit names to the Senate if the vacancy happens during the session of the Senate. The words, 'he *shall* nominate to the Senate,' are to me plain and unequivocal. 'Shall' is not a word of discretion. To conclude that 'shall' is a discretionary word in this context would require the mental addition of the words, 'unless the Governor decides otherwise.'

"Article IV, Section 8, provides that the Governor *may* fill vacancies during the recess of the Senate and, in the next sentence, that the Governor *shall* submit names to the Senate for vacancies happening during the session. I believe it is a fair and sound inference that

the people in adopting the Constitution realized the difference between mandatory 'shall' and discretionary 'may' and intended for them to have their ordinary meanings." *Stroup v. McNair*, 5 Pa. Commonwealth Ct. 244, 253-54 (1972) (MENCER, J., dissenting).

The cases upon which Mr. Justice MANDERINO and the concurring opinions rely do not counsel affirmance. Both *Commonwealth ex rel. Lafean v. Snyder*, 261 Pa. 57, 104 Atl. 494 (1918) and *Ritenour v. Peirce*, 442 Pa. 1, 272 A. 2d 900 (1971), involved gubernatorial appointments following Senate failure to confirm a properly submitted proposed permanent appointment. Here no permanent appointments were ever proposed.[4] These cases indicate only that when the Senate rejects or fails to act on an appointment, the Governor may make a temporary selection.

*Creamer v. Twelve Common Pleas Judges*, 443 Pa. 484, 281 A. 2d 57 (1971), was a case affirmed by an equally divided Court. Three Justices concluded that gubernatorial appointments made to positions vacated during a Senate session without submission of the nominees to the Senate were invalid.[5] Furthermore, as the majority recognizes, *Creamer* involved Article V, Section 13(b) of our Constitution, a section "materially different" from the provision now before us.

Here, the Governor failed to comply with his constitutional duty to submit nominations to the Senate for approval. In only one of the present cases did the vacancy occur while the Senate was not in session. Even assuming the initial appointments valid, the majority's nullification of Article IV, Section 8 is a gross misconstruction of a clear constitutional mandate. To

---

[4] See *Stroup v. McNair*, 5 Pa. Commonwealth Ct. 244, 251-53 (1972) (MENCER, J., dissenting).

[5] See *Creamer v. Twelve Common Pleas Judges*, 443 Pa. 484, 503-04, 281 A. 2d 57, 66 (1971) (Opinion by Mr. Chief Justice BELL Supporting in Part and Opposing in Part the Results Announced in the Per Curiam Order) (joined by O'BRIEN and ROBERTS, JJ.)

permit the chief executive, by fiat, to abrogate the constitutional system for executive appointments undermines in yet another respect our system of separation of powers.

Pragmatically, this decision sanctions the practice of the executive's making appointments without Senate confirmation. As a consequence of this decree the contested appointees as well as hundreds of others, never confirmed, continue in office. It is predictable that they will continue in their offices until the 157th regular session of the Legislature ends either by sine die adjournment or by failure to adjourn before the new 158th regular session convenes at noon on the first Tuesday of 1974.[6]

The aggrandizement of power in the executive was a persistent fear of our forbearers. For that reason, our Constitution carefully divided the sovereign power of the Commonwealth among the three branches of government. The prophetic wisdom of this division is, particularly today, self-evident.

I am unable to accept an interpretation or a result so wholly lacking in constitutional accountability. I would reverse the order of the Commonwealth Court and instruct that court to dismiss defendants' preliminary objections, and proceed to hear and determine this important constitutional question on the merits.

I dissent.

Mr. Justice O'BRIEN joins in this dissenting opinion.

---

[6] See Pa. Const. Art. II, §4.