# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| DISABILITY RIGHTS PENNSYLVANIA; SENIORLAW CENTER; SOUTHEAST ASIAN MUTUAL ASSISTANCE ASSOCIATION COALITION, INC. (SEAMAAC); SUZANNE ERB; THE BARRISTERS' ASSOCIATION OF PHILADELPHIA, | : : : : : : : : | No. 83 MM 2020 |
| Petitioners | : : : | |
| v. | : : : | |
| KATHY BOOCKVAR, IN HER CAPACITY AS SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA; AND JESSICA MATHIS, IN HER CAPACITY AS DIRECTOR OF THE BUREAU OF ELECTION SERVICES AND NOTARIES OF THE PENNSYLVANIA DEPARTMENT OF STATE, | : : : : : : : : : : | |
| Respondents | : | |

## CONCURRING STATEMENT

**JUSTICE WECHT**                                    **FILED: May 15, 2020**

I join the Court's resolution of this matter. Although actual evidence of disruption in the United States Postal Service's mail delivery service may be probative of Petitioners' constitutional claims, and would be relevant to a future challenge on similar grounds, the instant request for emergency relief for the June 2, 2020 primary election is predicated upon mere speculation about what may or may not occur with delivery operations within the Commonwealth in several weeks' time. While circumstances may change, the

possibility that votes may be suppressed due to late ballot delivery, as presently alleged, is too remote at this time to constitute a cognizable injury.

I write separately to express my skepticism that a single chamber of our bicameral legislature would have standing to intervene in an action of this nature. Pennsylvania Senate President *Pro Tempore* Joseph B. Scarnati, III, and Senate Majority Leader Jake Corman (collectively, "Senate Intervenors"), aver that they "have been duly authorized to act in this matter by each of the members of the Senate Republican Caucus, which constitutes a majority of the Senate as a whole." Motion to Intervene, 5/6/2020, at unpaginated 1. Speaker of the Pennsylvania House of Representatives Mike Turzai and House Majority Leader Bryan Cutler (collectively, "House Intervenors") similarly attest that 109 of the 203 members of the House have authorized their intervention. *See* Petition to Intervene, 5/12/2020, at 1. Although both chambers' intervenors reiterate those apparent authorizations in their proposed preliminary objections and memoranda of law, they cite no formal enactment by the House or Senate purporting to authorize such interventions. That deficiency alone strikes me as problematic. Moreover, I am not confident that a formal enactment would be dispositive as to whether they have standing to intervene in the first place.

It is beyond dispute that "a State has standing to defend the constitutionality of its statute[s]." *Diamond v. Charles*, 476 U.S. 54, 62 (1986). And the Commonwealth has chosen to defend the instant mail voting statute by way of advocacy from the Department of State. But our Rules of Civil Procedure also pertinently provide that, "[a]t any time during the pendency of an action, a person not a party thereto shall be permitted to intervene therein" if: "(3) such person could have joined as an original party in the action or could have been joined therein; or (4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by

a judgment in the action." Pa.R.C.P. 2327(3)-(4).[1] Whether the House and Senate

Intervenors have satisfied either of those criteria determines their eligibility to intervene.

This Court has examined at length the history of legislative standing, most recently

in *Markham v. Wolf*, 136 A.3d 134 (Pa. 2016). There we recognized that members of the

General Assembly, *qua* legislators, have standing to litigate in their official capacity "only

in limited circumstances." Id. at 145.

> Standing exists only when a legislator's direct and substantial interest in his or her ability to participate in the voting process is negatively impacted, or when he or she has suffered a concrete impairment or deprivation of an official power or authority to act as a legislator . . . . These are injuries personal to the legislator, as a legislator. By contrast, a legislator lacks standing where he or she has an indirect and less substantial interest in conduct outside the legislative forum which is unrelated to the voting or approval process, and akin to a general grievance about the correctness of governmental conduct, resulting in the standing requirement being unsatisfied.

*Id.* (citing *Fumo v City of Phila.*, 972 A.2d 487 (Pa. 2009); *Wilt v. Beal*, 363 A.2d 876 (Pa.

Cmwlth. 1976) (*en banc*)) (cleaned up).[2] But *Markham*'s thorough explication of the limits

of legislators' standing need not be belabored here, because the House and Senate

---

[1]    The remainder of Rule 2327 permits intervention where "(1) the entry of a judgment in such action or the satisfaction of such judgment will impose any liability upon such person to indemnify in whole or in part the party against whom judgment may be entered;" and where "(2) such person is so situated as to be adversely affected by a distribution or other disposition of property in the custody of the court or of an officer thereof." Pa.R.C.P. 2327(1)-(2). Because the underlying action involves neither the imposition of liability nor the disposition of property, these provisions plainly are inapplicable.

[2]    To the extent that this Court has agreed that individual legislators have standing to bring or join suits, those circumstances largely have been confined to *quo warranto* actions challenging the validity of certain appointments made by the Governor allegedly without the Senate's consent. In those cases, standing derived from the individual right of each Senator to vote to confirm or reject nominees. *See, e.g.*, *Zemprelli v. Daniels*, 436 A.2d 1165 (Pa. 1981); *Stroup v. Kapleau*, 313 A.2d 237 (Pa. 1973); *cf. Frame v. Sutherland*, 327 A.2d 623 (Pa. 1974) (assuming, but not deciding explicitly, that three members of the Senate could bring a suit related to the Governor's appointment powers).

Intervenors offer *no* argument that the present circumstances necessitate their intervention.

Since *Markham* was decided, the Supreme Court of the United States has had occasion to consider—and reject—the notion that a single chamber of a bicameral legislature has standing to intervene in defense of a state law. In *Virginia House of Delegates v. Bethune-Hill*, 587 U.S. ___, 139 S.Ct. 1945 (2019), the Court considered an appeal brought by the Virginia House and its Speaker as intervenors in defense of Virginia's legislative districts—nearly a dozen of which had been struck down by a three-judge District Court as racial gerrymanders in violation of the Fourteenth Amendment's Equal Protection Clause—after the Commonwealth declined to appeal the decision. *Id.* at 1949-50. The Supreme Court held that the Virginia House, "as a single chamber of a bicameral legislature, ha[d] no standing to appeal the invalidation of the redistricting plan separately from the State of which it is a part." *Id.* at 1950.

Central to the Court's decision was the intervenors' inability to "independently demonstrate standing." *Id.* at 1951. Although a State may "designate agents to represent it in federal court," *id.* (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 710 (2013)), the Commonwealth had not so designated the lower chamber of its General Assembly in the matter. *Compare id.* at 1952 ("Virginia has thus chosen to speak as a sovereign entity with a single voice."), *with Karcher v. May*, 484 U.S. 72, 82 (1987) (concluding without extensive explanation that "the New Jersey Legislature had authority under state law to represent the State's interests"). Rejecting the House's assertion that it had "standing in its own right" to pursue the appeal, the Court observed that it had

> never held that a judicial decision invalidating a state law as unconstitutional inflicts a discrete, cognizable injury on each organ of government that participated in the law's passage. The Court's precedent thus lends no support for the notion that one House of a bicameral legislature, resting solely on its role in the legislative process, may appeal on its own behalf a judgment invalidating a state enactment.

*Bethune-Hill*, 139 S.Ct. at 1953. Because the Virginia Constitution "allocate[d] redistricting authority to the 'General Assembly,' of which the House constitute[d] only a part," *id.*, the fact that each chamber independently voted to adopt Virginia's legislative districts following the 2010 decennial census was irrelevant to standing considerations.

Significantly, the Court distinguished the Virginia House's situation from that of the Arizona Legislature in *Arizona State Legislature v. Arizona Independent Redistricting Commission*, 576 U.S. ___, 135 S.Ct. 2652 (2015), "in which the Court recognized the standing of the Arizona House and Senate—*acting together*—to challenge a referendum that gave redistricting authority to an independent commission, thereby allegedly usurping the legislature's authority . . . over congressional redistricting." *Bethune-Hill*, 139 S.Ct. at 1953 (emphasis in original). Thus, "[j]ust as individual members lack standing to assert the institutional interests of a legislature," *id.* at 1953 (citing *Raines v. Byrd*, 521 U.S. 811, 829 (1997) (holding that individual Members of Congress lacked standing to challenge the Line Item Veto Act)), the Court concluded that "a single House of a bicameral legislature lacks capacity to assert interests belonging to the legislature as a whole." *Id.* at 1953-54.

This Court previously has found the federal courts' decisions on prudential standing in the context of legislative interests to be "helpful." *Fumo*, 972 A.2d at 500 n.5; *see id.* at 500 (citing *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 253 (3d Cir. 2009) (rejecting Pennsylvania legislators' standing to challenge "increased salaries for state legislators" and others pursuant to "the General Assembly's enactment of Act 44 [of 2005] in a sleight-of-hand manner during the dead of night")). Although *Bethune-Hill* does not bind this Court, I find it persuasive. As in *Bethune-Hill*, it appears that there is no independent statutory authorization for the General Assembly to intervene here, let alone

for either of its chambers, acting independently on behalf of their respective caucus majorities, evidently without even consulting with their chambers' full membership.

Like the Virginia House of Delegates, the House and Senate Intervenors have "purported to represent [their] own interests," *Bethune-Hill*, 139 S.Ct. at 1952, rather than those of the Commonwealth. *Id.*; *see also id.* at 1953 ("Nowhere in its motion did the House suggest it was intervening as agent of the State."). This is not a case where they allege that a power delegated to them by the Pennsylvania Constitution has been usurped by a coordinate branch of government. Nor is it one where individual legislators can claim that their rights as the people's elected representatives within those legislative bodies have been curtailed. *See Robinson Twp. v. Commonwealth*, 84 A.3d 1054 (Pa. 2014) (*per curiam*). Our foundational Charter confers no authority on individual legislators or caucuses within each respective chamber to act on behalf of the General Assembly or to substitute their interests for the Commonwealth. Pursuant to Article II, Section 1 of the Pennsylvania Constitution, "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." PA. CONST. art. II, § 1. Because the House and Senate Intervenors in their official capacity cannot speak for the General Assembly as a whole, and therefore do not collectively represent that body's legislative prerogatives, in an appropriate case I would be receptive to the argument that they are not "person[s]" with a "legally enforceable interest" permitted to intervene under Rule 2327 in an action challenging the constitutionality of a Pennsylvania statute.[3]

---

[3]     House and Senate Intervenors nonetheless may seek leave of court to file briefs as *amicus curiae* consistent with the requirements of Pa.R.A.P. 531.